## CHANDLER & CHANDLER v. CITY OF SHREVEPORT. *
### No. 5100.

Court of Appeal of Louisiana.
Second Circuit.
June 29, 1935.

---

*Rehearing denied July 15, 1935.

J. H. Jackson and R. H. Switzer, both of Shreveport, for appellant.

Lee & Lee, Sidney G. Myers, and Chandler & Chandler, all of Shreveport, for appellee.

MILLS, Judge.

On August 4, 1932, after some preliminary verbal discussions with Mr. Robert C. Chandler, George W. Hardy, then mayor of the city of Shreveport, addressed to his firm the following letter:

"Chandler & Chandler, Commercial Bank Bldg., Shreveport, La.

"Attention: Mr. R. G. Chandler

"Dear Sir: I have spoken to some of the Commissioners with reference to beginning work on the codification of the city ordinances and am writing this letter to ask that you undertake the task of compiling and correlating the laws of the city in order that a code of laws may be prepared and submitted to the Council.

"As you know, the financial condition of the city at the present time will not permit an appropriation for this particular work, but I am assured by a majority of the Council that appropriate compensation for your services and expenses in connection with this work will be comprehended in the budget for the coming year.

"It occurs to me that the necessary work will be somewhat tedious and involved and in all probability you will not be able to present a draft of the proposed code until the latter part of the year. However, I am sure it is not necessary to impress upon you the fact that this matter be completed in as short a period of time as may be reasonably possible.

"You will please consider this letter your authorization, in the event you are willing to accept the assignment, to begin work at such time as you may desire. All ordinances and resolutions which have been heretofore adopted will be delivered to you by Mr. John McW. Ford, Commissioner of Accounts and Finance, as you may have need of them.

"The following is a brief outline of the requirements we have in mind which you will please accept as a guide in your work:

"1. The arrangement of all ordinances and resolutions chronologically.

"2. The alphabetical indexing and cross-indexing of all ordinances and resolutions, which in my opinion, should be separately arranged and indexed.

"3. Memorandums with reference to the repealed, partly repealed, obsolete, antiquated and unnecessary ordinances and resolutions which would be valueless in so far as the adoption of a modern code might be concerned.

"4. Recommendations which might lead to the attainment of brevity in a final code which might be adopted.

"With these ideas in mind I am sure you will understand the aims and purposes we have before us and we depend upon your discretion and ability in offering any suggestions which you might deem appropriate under the circumstances.

"In connection with the expenses of this endeavor it is of course impossible for us to fix any definite sum as an allowance and we rely upon you to incur only expenses which are absolutely necessary in the preparation of this work.

"You will please note your acceptance and approval upon a copy of this agreement which you will return to us at your convenience.

"With kindest regards, I am

"Sincerely yours,

"George W. Hardy, Jr., Mayor."

On November 27, 1933, Chandler & Chandler transmitted to the mayor a draft of the compilation.

The price verbally agreed upon for the work was $1,500 and the necessary ex-

penses incurred. The $1,500 was paid by the commissioner of finance, but a demand for $478.20, covering the items of expense, was rejected by him. Chandler & Chandler bring this action in contract and, in the alternative, on a quantum meruit to recover of the city of Shreveport this amount.

The defense is that the contract entered into by the mayor without the authority of the city council is ultra vires, null, and void. That the said work has never been officially accepted by the council or the contract ratified by them. Defendant has appealed from a judgment for plaintiff as prayed for.

The testimony shows that the mayor, before writing the above letter, discussed the matter with two of the other four commissioners, Messrs. Ford and Evans. As to Mr. Evans, the testimony is limited to the mayor's statement that he had knowledge of the transaction. As he does not take the stand, his attitude is only inferentially disclosed. Mr. Ford, commis-sioner of finance, says that the mayor consulted him about the matter and that he gave it his approval with the express understanding that the entire cost would not exceed $1,500. He never saw or had knowledge of the letter quoted above until after the mayor had left office and the work was done. When presented with a bill by Chandler & Chandler for $1,978.20, he refused to pay it, but on a later date when a second bill for $1,500, bearing the mayor's approval, was tendered, he ordered same paid.

No action of any kind was ever taken in the matter by the city council as such. The contract was never discussed at any meeting or approved by it, nor was the payment of the $1,500 authorized or approved.

The only testimony as to any authorization or ratification is the statement of the mayor that,

"Three of the five members of the City Council had knowledge of the agreement, and all of the members of the council had knowledge of the work after it was performed, and I think, without exception availed themselves of the benefit of the work as performed."

The item was not budgeted, nor was its payment provided for. The amount paid was, without authorization of the council, charged to the sum allotted in the budget for "Incidentals."

As Mr. Ford testifies that he only approved the project after the assurance that the total charge would not exceed $1,500; and as it is proven that Commissioners Dawkins and Dickson knew nothing at all about the proposal, it cannot be contended that the portion of the contract sued on herein had, at its inception, even the unofficial approval of a majority of the council.

The question then is: Had the mayor authority to bind the city by such a contract, and if not, has the city legally ratified it? It is conceded that he had no such authority unless the matter was incidental to or contingent upon some authorized undertaking, or unless it was included in the mayor's general authority as agent of the city.

A matter is incidental when it inseparably depends upon, pertains to, and is subordinate to a main or principal project. It is contingent when it is liable, but not certain, to be incurred, in that it depends upon something else that may or may not occur; a matter that cannot be foreseen with certainty.

As the council had passed no resolution authorizing the compilation or codification of the city's laws, the expense in the case was not incidental to nor connected with any other project, nor did it arise out of any unforeseen happening or any sudden emergency. There is no apparent reason why it should have been undertaken without the full consideration of the council, which met many times between the beginning and completion of the work. The power to codify its laws had been granted the city as far back as 1910, by Act No. 156 of that year, subsequently amended and re-enacted by Act No. 16 of 1926. These acts are not directory. They merely grant to certain municipalities the power to codify. This authority could only be availed of by proper action on the part of the city council. It involved not only the matter of expense, but the broader question of policy. It was for the council to decide whether or not they desired to adopt a code. No reason is suggested for haste at this late day. We do not think the mayor was authorized to enter into this contract because it was incidental to some authorized matter, arose out of any contingency, or was necessary to meet any emergency. Nor do we think he had such authority because of any general agency. The powers and duties of municipal offi-

cers are fixed by law. Persons dealing with them do so at their peril and must take notice of their limitations. The contract in question, involving an outlay of almost $2,000, was not an ordinary administrative affair, but a distinct, unusual, and important matter entitled to the attention of the council.

We are satisfied that the mayor was without authority to bind the city by this contract, and that plaintiff can only recover, if at all, on the ground of ratification of a contract susceptible of such action.

As municipalities of more than 10,000 inhabitants were empowered to adopt codes, a properly authorized expense incurred in the codification of its laws would be a liability of the city. Defendant's position is that the contract, though intra vires the city, is ultra vires the mayor. That it was null and void ab initio and not susceptible of ratification. We do not think this position tenable. The contract being one that the city could make, is certainly one that the city can ratify unless such ratification comes in conflict with some prohibitory law.

The first act relied upon as constituting a ratification is the payment of a portion of the total amount claimed. The circumstances surrounding this payment are thus stated by Mr. Ford:

"A. When Mr. Chandler came to my office and presented that bill totaling nineteen hundred and some dollars, bearing the approval of Mayor Hardy, I said no, my understanding of this agreement was that the total expense would not exceed fifteen hundred dollars, and I am prepared to instruct voucher to issue for that amount but nothing in excess thereof.

"Q. Did you do that? A. Mr. Chandler left my office, if my memory is correct, and then at a later date the bills were prepared, which totaled fifteen hundred dollars, bearing Mayor Hardy's approval, and those bills were approved by me and voucher ordered issued. I again declined to have anything to do with the item of four hundred and some odd dollars, without authority of the Council."

It might be, but is not, contended that after the refusal to pay the larger bill, the tendering of one for $1,500 and acceptance of payment thereof constituted a waiver of the overplus.

This payment, made out of the sum budgeted for incidentals, was not brought to the attention of the council or acted upon in any way by it. If there was any ratification, it was by the finance commissioner only. As ratification can only be accomplished by the party having power to contract in the first instance, and as Mr. Ford had no such power, the payment made by him was not a ratification by the city.

The theory of ratification is that the party, by some action or inaction, clearly evidences the intention of approving and adopting as his own some hitherto unauthorized transaction.

As Mr. Ford, at the time of payment, expressly repudiated the item sued for, he cannot be presumed to have intended to approve it. It is true that a party with knowledge of the whole cannot ratify part of an unauthorized contract and reject the rest. Plaintiff having, after being met by a refusal to pay the whole amount, presented a bill for less cannot claim that its payment ratified the larger demand.

The second ground relied upon as an implied ratification is the acceptance and use of the work. It is well settled that a person cannot knowingly accept the benefit of a contract and escape its obligation. The city council never, as a body, accepted or used the compilation. It never took any action based upon it. The facts relied upon are summed up in the testimony of Mr. Hardy that all of the members of the council had knowledge of the work, and that he thinks that they all used it. Their individual action could not bind the city. Furthermore, as stated above, ratification is founded upon knowledge and intention. The city had paid $1,500 and plaintiff had accepted that amount. The payment was intended to be in full of all claims. It is not proven that the councilmen using the work individually did so with knowledge of any further claim or with intention of ratifying same.

Defendant contends that the contract is not susceptible to ratification, being in conflict with section 16 of Act No. 302 of 1910, requiring of municipalities under the commission form of government to adopt and publish a yearly budget containing a detailed estimate of the various items of liabilities and expenditures; and also in

conflict with section 2448 of the Revised Statutes requiring that an ordinance creating a debt or pecuniary liability must provide the means of paying same. Citing the cases of Citizens' Bank v. Town of Jennings, 107 La. 547, 32 So. 66, wherein notes given in payment for fire engines whose purchase was authorized by a resolution which did not comply with the requirements of Revised Statutes, § 2448, were held not judicially enforceable; and Oubre v. Donaldsonville, 33 La. Ann. 386, wherein it is held, in regard to said section 2448:

"Frequent adjudications of this Court have placed it beyond controversy that debts contracted by municipal authorities in violation of this prohibitory law are stricken with nullity and are incapable of judicial enforcement."

See, also, 90 A. L. R. 1241; Tremont Lumber Co. v. Police Jury, 144 La. 1934, 81 So. 703, and Dunham v. Town of Slidell, 133 La. 212, 62 So. 635.

Plaintiff replies that the item in question was tacitly included in the budget under the head of incidentals, and that the section 2448 applies only to the creation of long-term obligations. As we have found that there was no act of ratification, it is unnecessary to unduly lengthen this opinion by passing upon this defense.

The alternative demand on quantum meruit is not urged.

For the reasons above given, the judgment appealed from is reversed and judgment is now rendered rejecting plaintiff's demand, with costs.