### LILLEY v. CITY OF SHREVEPORT. *

#### No. 5164.

Court of Appeal of Louisiana. Second Circuit.

Nov. 6, 1935.

J. H. Jackson and R. H. Switzer, both of Shreveport, for appellant.

Barksdale, Bullock, Warren, Clark & Van Hook, of Shreveport, for appellee.

MILLS, Judge.

January 1, 1930, its council, by Resolution No. 166 of 1929, placed the police department of the city of Shreveport under civil service in accordance with the provisions of Act No. 187 of 1918. It authorizes the board of civil service commissioners thus created to "adopt all rules and regulations for making effective said law." The act itself provides, in section 33:

"That the said Board shall as soon as possible after its formation, formulate rules and regulations for its government and the conduct of its activities all in accordance with the provision hereof."

While the employment of a secretary is not specifically mentioned in the act, many clerical functions made necessary in the preparing and conducting of examinations, making reports, etc., made imperative the need of a secretary.

Section 14 of the act requires:

"That the Council shall provide suitable quarters for the use of the Board, and it shall be the duty of all officers of the City to aid said Board to carry out the provisions of this act. The Council shall appropriate a sufficient sum of money each year to fully carry out the purposes for which the Board is created."

Section 26 reads:

"That immediately upon this act becoming a law, it shall be the duty of the City Council to budget and appropriate a sum sufficient for the purpose of properly organizing the Civil Service Department."

The civil service commission met January 7, 1930, and adopted rules and regulations, including:

"Rule 1, section 2. This Board shall elect a secretary, who may not be a member of the Board, and fix the salary of the same."

The minutes of a meeting of the board, held February 12, 1931, contain the following:

"The Board then proceeded unanimously to elect Mrs. Ilene G. Lilley as secretary of the Civil Service Commission for the City of Shreveport to take the place of John R. Pleasant, former secretary; Mrs. Lilley to take office March 1, 1931."

It will be noticed that the salary of the secretary is not fixed in the resolution.

Defendant in its answer admits that Mrs. Lilley, during the year 1931, "served

in the capacity alleged for which defendant paid plaintiff, in addition to the salary plaintiff was receiving for other services during said period from defendant, a salary of twenty-five ($25.00) dollars per month. Defendant denies that for the years 1932 and 1933, and until April 10, 1934, plaintiff was employed to render the services alleged at the salary stipulated, or any other salary, and further avers that defendant did not agree to pay plaintiff any salary for said period."

The acting secretary of the board testifies that in the meeting wherein Mrs. Lilley was elected secretary, her salary was fixed at $25, but that he inadvertently omitted an entry to that effect from the minutes. He testifies further that he had been paid for his secretarial services either $100 or $125 per month, but that the board felt that from the time of Mrs. Lilley's election the work had been cut down to where it could be consolidated with that of some employee of the city for an extra compensation of $25 per month. Mrs. Lilley at that time was secretary of the city board of health, at a salary of $150 per month, having been reduced from $210.

It is admitted that Mrs. Lilley served as secretary of the board of civil service commissioners until April 10, 1934. The record does not disclose any further action by that board in regard to her salary or employment.

The $25 salary was regularly paid by the city throughout the year 1931, but has not been paid from January 1, 1932, up to April 10, 1934. The present suit is to recover from the city this unpaid sum, amounting to $683.34.

The judgment of the lower court, from which defendant has appealed, was in favor of plaintiff as prayed for.

The city budgets for 1932, 1933, and 1934 included no provision for the payment of the salary of the secretary, or any other expense, of the board of civil service commissioners. Office expenses such as stationery were paid without budget out of the incidental fund.

Mr. Ford, the commissioner of finance, says that when the payment of her salary stopped, he told Mrs. Lilley that no provision had been made for it, but that he hoped if the city ever got any more money he would help her.

Mrs. Lilley testifies that she had no knowledge that the salary in controversy would not be regularly paid after 1931, until she received her check for the first half of January, 1932. That she went to Mr. Ford for an explanation and was told by him, "Well, this year the city could not make an appropriation for a budget for the Civil Service, but if you can serve I think you will eventually get your money"; and that she continued to do the work with that understanding. She says that she did not waive, or intend to waive, her right to the salary, and that she had no other idea but that she would eventually get it. That she never received any notice that her job or her pay had been permanently discontinued. The question of such a discontinuance was never discussed at any meeting of the board of civil service commissioners or of the city council.

Mrs. Lilley permitted the question of the payment of her salary to rock along, thinking that she was saving that amount monthly for a future day, until she learned that the lady who succeeded her after April 10, 1934, had in November of that year been paid by the city $140 for seven months' service. She then very humanly wrote the mayor and ex officio chairman of the civil service commission demanding that she also be paid. This being refused, the present suit resulted.

From the above it is clear that the obligation of the city to pay the reasonable expenses of the board of civil service commissioners was imposed upon it by law and not by contract. It is obvious that the commission could not operate without a secretary. J. G. Palmer, former mayor and chairman of the board, testifies that Mrs. Lilley's services were not only necessary, but indispensable. She was duly elected by the commission, and her salary fixed. She rendered the services required until April 10, 1934. She had not been discharged by the board, which legally employed her, nor had she been told by it that her salary would not be paid. She was never discharged, nor told that her salary would not be paid, by the city council or any official of the city until April 10, 1934.

We do not believe the position defensible that obligations can be discharged by deferring their payment, or that a municipal corporation can avoid obligations imposed upon it by law, by the simple expedient of refusing to budget them. It is true that under the law the city cannot create a debt without providing for the means of paying it. But this obligation was cre-

ated by law, not contract. As shown, the city, by proper resolution, availed itself of the provisions of Act No. 187 of 1918 in regard to a board of civil service commissioners, under the obligation, imposed by sections 14 and 26, of paying its expenses. It cannot enjoy the privileges and avoid the reasonable and just obligations. To our mind, and according to the testimony of its former chairman, the services of a secretary were indispensable and therefore incidental to the creation of the board. The city recognized its obligation by paying the salary during the year 1931, and by paying Mrs. Lilley's successor for seven months after April 10, 1934. We can find no good reason why it should not pay for the same service during the intervening period.

We find no similarity between the present case and that of Chandler & Chandler v. City of Shreveport (La. App.) 162 So. 437. In the latter case compensation was demanded for work done on a separate and distinct major project which had never been approved or authorized by the city council.

Finding the judgment of the lower court correct, it is affirmed.