The Honorable Henry M. Helgerson, Jr. State Representative, Eighty-Sixth District 4009 Hammond Drive Wichita, Kansas 67218-1221
Dear Representative Helgerson:
As representative of the eighty-sixth district you inquire whether a certain swine operation as described herein comes within the feedlot exception to the proscription against corporate ownership of agricultural land found at K.S.A. 1993 Supp. 17-5904, as amended by L. 1994, ch. 130, sec. 4.
You indicate the following: A Kansas corporation authorized to do business in Kansas desires to purchase 960 acres of agricultural land to be used as a swine feedlot operation; all swine located at the facility are to be owned by the corporation and are to be held for sale for slaughter purposes only; the corporation will breed and farrow its own swine only as is incidental to the feedlot operation and will not sell the seed stock except for slaughter; the swine are to be kept in a fenced area of approximately forty acres, with the remaining acreage of the facility used for swine feces waste disposal.
A feedlot is defined in L. 1994, ch. 130, sec. 3 as "a lot, yard, corral, or other area in which livestock fed for slaughter are confined." The definition does not encompass a farrow to finish operation that includes the breeding of animals. You refer us to Attorney General Opinion No. 83-160 wherein we opine that a foreign corporation may operate within the feedlot exception when, as incidental to the feedlot operation, the corporation engages in the breeding of the hogs within its own stock so long as the bred hogs are not sold but are strictly fed for slaughter.
Opinion No. 83-160 remains valid except as it is otherwise affected by the 1994 legislative changes to the act found in chapter 130 of the 1994 session laws, sections 3 and 4. Whereas the legislature did not change the feedlot exception, it added an additional exception. A swine production facility, defined in subsection (5) of section 3 as one used for housing, breeding, farrowing or feeding of swine, is now subject to a partial exception from the act. The swine production facility exception, unlike any other, requires that the county approve the facility by resolution or by the electorate in accordance with L. 1994, ch. 130, sec. 1.
While clearly a swine feedlot involves the feeding of swine, the feedlot exception does not require county approval. The difference in the definitions apparently involves the slaughter of the animals. The feedlot definition in the act includes the slaughter of animals, but not the breeding; a swine production facility includes the breeding but not the slaughter. Whether incidental activities were contemplated as part of these two distinct categories is not certain. We thus turn to statutory construction rules for assistance.
It is a primary rule of statutory construction that when the intent or purpose of the legislature can be ascertained, it must be followed. Toddv. Kely, 251 Kan. 512, 515 (1992). We may presume from the legislative amendments that the legislature did not intend to enact useless legislation. Ibid. With these rules in mind we find that the legislature clearly intended there be a distinction between a swine feedlot and a swine production facility. The definitions clearly indicate that a feedlot operation feeds the swine for slaughter and a swine production facility engages in a farrow to finish operation. (We note that the statute regulating feedlots, K.S.A. 47-1501 does not include the slaughter requirement in the definition of a feedlot.)
In order to keep these two categories distinct the breeding operation in question must be incidental to the feedlot operation. A matter is incidental to an authorized undertaking when it is subordinate to the main or principal project. Chandler Chandler v. City of Shreveport, 162 So. 437, 439 (1935). Whether the breeding is incidental depends on whether the feedlot operation remains the principal project. Accordingly a breeding operation used to maintain a feedlot operation that is self-sustaining wherein pigs are bred in a farrow to finish function and then fed for slaughter runs afoul of the definition of what is "incidental." It is important to keep the two categories (a feedlot and a swine production facility) distinct because the 1994 legislative changes have added the additional requirement of county approval to the operation of a swine production facility. In keeping with this legislative intent to distinguish between the categories, a corporation may not use its incidental breeding operation in order to maintain a certain size herd as a sole source of feeder pigs to take to slaughter; as indicated this breeding operation would not be incidental to the feedlot operation and thus might require county approval as a swine production facility. However, a feedlot operation may breed some of its stock as incidental to its feedlot operation if it also purchases feeder pigs from another supplier as its substantial source of feeder pigs to feed and take to slaughter. Whether the corporation in question intends to purchase feeder pigs from another supplier is a fact question, not readily ascertainable from the facts presented.
With this fact based qualification we conclude that in our judgment a feedlot operation may breed some of its stock if the feedlot operation does not use the breeding operation as a sole and/or principal source of feeder pigs. We thus opine that in order to have an incidental breeding operation a corporation within the feedlot exception must purchase feeder pigs from another supplier as its substantial source of feeder pigs to feed and take to slaughter. We note that Attorney General Opinion No. 83-160 remains valid as qualified herein.
Very truly yours,
 ROBERT T. STEPHAN Attorney General of Kansas
 Guen Easley Assistant Attorney General
RTS:JLM:GE:jm