(83 South. 657)

No. 23844.

In re PEREZ.

(Jan. 12, 1920.)

*(Syllabus by Editorial Staff.)*

1. CONSTITUTIONAL LAW ⟨⟩8—JUDGES ⟨⟩8 —SUPREME COURT WITHOUT CONSTITUTIONAL AUTHORITY TO APPOINT JUDGE OF THE DISTRICT COURT TO FILL VACANCY.

Const. 1913, art. 94, does not confer on the Supreme Court, or any justice thereof, authority to appoint a judge of a judicial district in case of vacancy, and article 112, conferring such authority, was inserted by the constitutional convention in violation of the act calling the convention, Act No. 1 (Ex. Sess.) of 1913, ratified by the people, which forbade increasing the authority of any public officer, so that neither the Supreme Court nor justice can make such appointment.

2. JUDGES ⟨⟩8—SUPREME COURT CAN CORRECT ITS INADVERTENCE OR ERROR IN APPOINTING JUDGE OF INFERIOR COURT.

Where the Supreme Court without authority appointed one to act as judge of the district court, such inadvertence or error ought to be corrected and could be corrected by the Supreme Court ex proprio motu.

3. JUDGES ⟨⟩8 — GOVERNOR'S COMMISSION PRIMA FACIE PROOF OF RIGHT OF JUDGE TO PERFORM OFFICIAL DUTIES.

If a temporary appointment or designation to fill a vacancy on the district court bench, made by the Supreme Court or a judge thereof, was valid, the term of appointment would be at an end when the vacancy has been filled by appointment by the Governor, and the Governor's commission is prima facie proof of the right of his appointee to enter on and perform such duties, and in the absence of judicial contest must be recognized by the Supreme Court.

4. JUDGES ⟨⟩8—TIME FROM DEATH OF JUDGE UNTIL EXPIRATION OF TERM BEING LESS THAN ONE YEAR AUTHORIZED GOVERNOR'S APPOINTMENT TO FILL VACANCY.

Where a judge died on December 4, 1919, and the general election must be held on November 2, 1920, so that the judge then elected could qualify on December 2, or 3, 1920, the Governor was justified in holding that the vacancy was one for less than a year for which he could make an appointment and for which a special election was not required.

5. COURTS ⟨⟩209(2)—VALIDITY OF GOVERNOR'S APPOINTMENT TO FILL JUDICIAL VACANCY CANNOT BE QUESTIONED BY INTERVENER'S PROCEEDING AGAINST TEMPORARY APPOINTEE OF SUPREME COURT TO FILL SUCH VACANCY.

In a proceeding by one appointed district judge by the Governor, for prohibition or other writ against one appointed by the Supreme Court to fill such vacancy, *held*, that the clerk of such judicial district and the district attorney as interveners had no standing to question the validity of the Governor's appointment; such matter not being in contest.

Monroe, C. J., and Sommerville, J., dissenting.

Original proceedings by Leander H. Perez for prohibition or other remedial writ rescinding an order of the Supreme Court appointing another as judge of a judicial district. Order designating and appointing respondent decreed null and of no effect.

Harold A. Moise, Walter S. Lewis, and Robert H. Marr, all of New Orleans, for Leander H. Perez, relator.

John Dymond, Jr., and A. Giffen Levy, both of New Orleans, for Frank J. Lobrano, Clerk Twenty-Ninth Judicial District Court.

N. H. Nunez, Dist. Atty., of St. Bernard, and John Dymond, Jr., and A. Giffen Levy, both of New Orleans, for N. H. Nunez, District Attorney, intervener.

O'NIELL, J. R. Emmet Hingle, judge of the district court for the Twenty-Ninth judicial district, died on the 4th of December, 1919. That fact was certified to this court by the

clerk of the district court, on the 6th of December, 1919; and, on that day, the chief justice signed an order, purporting to be authorized by article 112 of the Constitution designating and appointing Hugh |C. Cage, a judge of the civil district court for the parish of Orleans, to hold court in the Twenty-Ninth judicial district and to discharge all of the judicial duties of a judge of that district until the vacancy caused by the death of Judge Hingle should be filled according to law.

On the 11th of December, Leander H. Perez appeared in the Supreme Court and presented his commission as judge of the district court of the Twenty-Ninth judicial district, signed by the Governor of Louisiana, dated the 5th of December, 1919; and he filed therewith a petition addressed to the Supreme Court, asking that the order appointing or designating Judge Cage to act as judge in the Twenty-Ninth judicial district be revoked. This court ruled that the order should not be revoked. The main reason for the ruling was that the ex parte proceeding adopted by Judge Perez was not a proper remedy. The writer dissented from that ruling and handed down written reasons for so doing.

Judge Perez then instituted this proceeding in which by an order signed by the chief justice on the 17th of December, 1919, the Honorable Hugh C. Cage was ordered to show cause why a writ of prohibition or other remedial writ should not issue, and why the order dated the 6th of December, 1919, designating him to act as judge of the Twenty-Ninth judicial district court, should not be rescinded.

It is alleged in the relator's petition, and is not denied in the answer of Judge Cage, that he is preventing Judge Perez from exercising his authority as judge, and has instructed the sheriff and the clerk of the district court of the Twenty-Ninth judicial district to prevent Judge Perez from discharging any judicial function in said district.

Relator alleges in his petition: First, that the order of the chief justice, appointing Judge Cage to act as judge of the Twenty-Ninth judicial district court, was an absolute nullity, because the chief justice did not have jurisdiction or authority, nor did any justice of this court, or the court itself, have jurisdiction or authority, to make an appointment or designation of a district judge to fill a vacancy in the office of district judge; and, second, that, even if the appointment or designation of Judge Cage to perform the duties of judge of the Twenty-Ninth judicial district court was valid, it was declared in the order appointing him that he should discharge those duties only until the vacancy caused by the death of Judge Hingle should be filled according to law; and that the appointment of Judge Cage, even if originally valid, had been terminated by the taking of the oath of office by the Governor's appointee.

In his answer to the rule, Judge Cage, very properly, acknowledges that he has no interest whatever in this matter. He makes the allegation, which is altogether irrelevant, that the people—we presume he means some of the people—of the Twenty-Ninth judicial district take issue with the Governor in the latter's belief that he had authority to appoint a successor to the late Judge Hingle. That allegation is the reason or cause shown by Judge Cage for refusing to surrender to Judge Perez the office of judge of the Twenty-Ninth judicial district court. And that, too, in our opinion, is a matter with which Judge Cage should not be concerned. In fact, Judge Cage so admits, and puts the issue squarely up to us, in his answer to the rule, thus:

"That it is apparent that this appearer has no jurisdiction to decide this issue" (referring to the people's having taken issue with the Governor); "and as these facts are well known to this honorable court, and as it has not seen

fit to order appearer to cease exercising the duties of judge in the district aforesaid, it is equally apparent that it is the duty of appearer to continue in his present course until this honorable court instructs him to cease;

"That appearer desires to make clear to this honorable court that he does not claim and has never claimed any right or franchise or title in or to the office of judge of the Twenty-Ninth judicial district court, nor to the honors, dignities or emoluments thereof;

"That, accordingly, he has no interest in this proceeding, other than to fulfill his duty as an officer of this state, and to render obedience to the orders of this honorable court.

"Accordingly, appearer prays that this honorable court will render such orders and decrees herein as to it shall seem consonant with the facts, the Constitution and the laws; and that, in so doing, it will be pleased to declare that this appearer is in no sense a party defendant and cannot be cast in costs."

The sum and substance of Judge Cage's answer to the rule, therefore, is that it is not his doing, but the refusal of this court to revoke his appointment, that is keeping Judge Perez out of office.

The clerk of the Twenty-Ninth judicial district court has intervened in this proceeding, alleging that he, not Judge Cage, is the party against whom the proceedings should have been brought, because he, the clerk of court, by his certificate, procured the appointment of Judge Cage. By way of exception to the proceeding of Judge Perez, the intervener asserts that the Supreme Court has not the supervisory jurisdiction to revoke the ex parte order, directing Judge Cage to hold court in the Twenty-Ninth judicial district; and the intervener, by way of exception, contends that this proceeding of Judge Perez should be dismissed because he, the clerk of court, was not notified of the intention of Judge Perez to ask us to revoke the appointment of Judge Cage. The intervener also alleges that the issue is between the Governor of Louisiana and the people of the Twenty-Ninth judicial district. But the only people who appear to be questioning our authority to set aside the ex parte order

appointing Judge Cage are the clerk of the Twenty-Ninth judicial district court, and the district attorney. He also intervened, alleging that, as district attorney, he was ex officio the representative of the people of the judicial district. He, too, excepts to the jurisdiction of this court to set aside the ex parte order appointing Judge Cage; and this intervener also takes exception to the fact that the relator herein did not serve notice upon the clerk of the district court that he, Judge Perez, intended to institute this proceeding.

The respondent, Judge Cage, did not file a brief in this court, but, very properly, submitted the matter as being entirely under our authority and control.

The interveners, however, have filed a brief; and in their brief they virtually concede that this court did not have—and that no justice hereof had—jurisdiction or authority, under article 112 of the Constitution, to fill, even temporarily, the vacancy caused by the death of Judge Hingle. The only reference to article 112 of the Constitution, in interveners' brief, is in this paragraph, viz.:

"It is true that, at the time of Judge Cage's appointment, there was some mention made of article 112 of the Constitution of 1913. But, on further reflection, we are convinced that there is no necessity for relying upon the Constitution of 1913 at all."

To say that "there was some mention made of article 112 of the Constitution" at the time of Judge Cage's appointment is a rather mild way of stating the fact—for it is a fact —that the certificate of the clerk of court, advising this court that it was necessary to make an appointment, was expressly founded uopn article 112 of the Constitution; and the order making the appointment declared that it was made with reference to the certificate. If article 112 did not confer the authority, there was no authority for making

the appointment, in the case of a vacancy in the office.

It is true the interveners contend that such authority is to be found in article 94 of the Constitution, vesting the Supreme Court with general supervision and control over all inferior courts. But the argument is immediately stultified by the contention of the interveners, in the same breath, as it were, that article 94 does not give this court authority to undo, in this proceeding, what was done in the ex parte proceeding appointing Judge Cage.

[1, 2] The contention that article 94 of the Constitution conferred upon this court and each or any justice hereof the authority to designate or appoint a judge of a judicial district court to serve in another district, even in case of temporary disability or absence of the judge of such other district, is hardly worth while considering. If that article could have been so construed, there would have been no reason for inserting article 112 in the Constitution of 1898. No such authority was ever exercised, or thought of being exercised, as far as we know, until article 112 was inserted in the Constitution of 1898. That article gave this court authority to designate or appoint a judge of a judicial district court to hold court in another district, only in case of temporary disability, or absence of the judge of such other district. It did not give this court authority to fill a vacancy caused by death, resignation, or otherwise. The framers of the Constitution of 1913 observed that there was no authority in the Constitution of 1898 for an appointment or designation, by the Supreme Court, of a judge of a district court to serve in another district where there was a vacancy in the office of district judge. The framers of the Constitution of 1913, therefore, undertook to confer the authority upon the Supreme Court, and upon each and every justice thereof. But, to that extent, the delegates in the constitutional convention of 1913, violated one of the mandates in the statute calling the convention, which statute had been ratified by a vote of the people. We refer to the Act No. 1 of the Extra Session of 1913, which, among other restrictions, forbade the enactment of any ordinance changing the duties or increasing the authority of any public officer. For that reason, it was held, in the case of the State v. American Sugar Refining Co., 137 La. 407, 68 South. 742, that the district attorney had no authority to institute the suit, for a violation of the anti-trust law; because the authority attempted to be conferred by the Constitution of 1913 was violative of the mandate to which we refer. The decision rendered in that case has been affirmed and reaffirmed so many times that it would be unreasonable to think of overruling it now. Under that ruling, the appointment of Judge Cage to preside as judge in the Twenty-Ninth judicial district was without constitutional or legal authority, and is therefore null.

Judge Cage is not entitled to the provisions of the Act No. 39 of 1873, "An act to regulate proceedings in contestations between persons claiming judicial office." Nor does he claim the benefit of that or any other statute, to maintain himself in office. If such a proceeding were brought against him, he would very properly answer, as he answers here—

"That he does not claim and has never claimed any right, franchise or title in or to the office of judge of the Twenty-Ninth judicial district court, nor to the honors, dignities or emoluments thereof."

And he would say, as he says in answer to the rule issued herein, that his only reason for continuing to prevent Judge Perez from exercising the duties of his office is that this court "has not seen fit to order appearer to cease exercising the duties of judge in the district aforesaid."

It is now too plain to admit of argument that the responsibility for the situation that is keeping Judge Perez out of office rests, not upon Judge Cage, but upon this court. The appointment was made with reference to the enlarged provisions of article 112 of the Constitution of 1913, and probably without adverting to the original provisions of the corresponding article of the Constitution of 1898. The appointment was therefore, in our opinion, an inadvertence or error, which ought to be corrected, and which this court could correct ex proprio motu.

[3] Even if Judge Cage's appointment were valid, it was only a temporary appointment or designation, to last only until the vacancy caused by the death of Judge Hingle could be filled. The vacancy had been filled by an appointment made by the Governor. The commission issued by the Governor to Judge Perez is, in law, prima facie proof of the right of Judge Perez to enter upon and perform the duties of the office. In the absence of a judicial contest, we recognize the commission issued by the Governor to Judge Perez as valid.

[4, 5] It is true, the district attorney and the clerk of the Twenty-Ninth judicial district court, as interveners in this proceeding, ask us to go behind the commission issued to Judge Perez and treat the appointment as invalid. They say that Judge Hingle qualified as judge on the 9th of December, 1916, and that therefore his four-year term of office would not have expired until the 9th of December, 1920, if he had lived until that date. The interveners therefore argue that the unexpired part of the term of Judge Hingle was more than a year at the date of his death, the 4th of December, 1919; and that the vacancy should be filled by a special election. Our opinion is that the interveners have no standing in this case to question the validity of the commission of Judge Perez. Nor would we be forced to consider their complaint well founded if they had a right to urge it. The misfortune that put an end to the term or tenure of office of Judge Hingle has put aside the question whether he might have held office until the 9th of December, 1920, even though his successor might have qualified sooner. The question before the Governor was: When might a successor qualify for the full term of four years? The Governor's answer was: December 2, 1920; that is, less than a year from the date of Judge Hingle's death. The election must be held on Tuesday the next day after the first Monday in November, 1920. It so happens that the 1st day of November will be Monday. Therefore the election will be held on the 2d day of November. The judge then elected may qualify 30 days after his election; say on the 2d or 3d day of December, 1920. The unexpired part of the term of the office made vacant by the death of Judge Hingle was, according to that calculation, less than a year; and, under the law, the Governor had reason to assume that he had authority to appoint a judge for the unexpired term.

We see no reason, however, why we should, on the mere suggestion of the interveners, who have no interest in this proceeding, question the validity of the appointment and commission of Judge Perez. In fact, the validity of his appointment or commission is not in contest here. The important facts are: First, that this court, and each and every justice thereof, was without jurisdiction or authority to make an appointment to fill a vacancy; and, second, that, if the appointment had been valid it would have expired by limitation when Judge Perez qualified.

There is no occasion for considering the question whether a judge of the civil district court for the parish of Orleans is eligible to be appointed or designated, in cases of temporary disability, to preside as judge of a judicial district court, which exercises criminal as well as civil jurisdiction.

For the foregoing reasons, the order dated

the 6th of December, 1919, designating and appointing the honorable Hugh C. Cage to perform the duties of judge of the district court of the Twenty-Ninth judicial district is decreed null and of no effect.

MONROE, C. J., ·dissents, and will hand down reasons. See 83 South. 661.

SOMMERVILLE, J., dissents.

DAWKINS, J., concurs in the decree, for reasons set forth in concurring opinion. See 83 South. 660.