15 So.2d 217

**BLAIZE v. HAYES, Sup'r of Public Funds, et al.**

**In re HAYES et al.**

No. 37190.

July 13, 1943.

Fred J. Heintz, of Convington, and John B. Smullin, of Baton Rouge, for relator.

R. A. Dowling, of New Orleans, and George M. Wallace, of Baton Rouge, for respondents.

O'NIELL, Chief Justice.

This being a case of public importance should be disposed of promptly, by

a final decree of this court, as we have disposed of other contests over an appointment to fill a .vacancy in a public office,— such as State ex rel. Palfrey v. Judges of Criminal Dist. Court of Parish of Orleans, 199 La. 232, 5 So.2d 756, and State ex rel. Livaudais v. Himel, 201 La. 168, 9 So.2d 509.

■ There is no doubt that the Governor had authority to appoint the plaintiff, Walter J. Blaize, to the office of sheriff, to fill the vacancy caused by the death of Sheriff Dauterive on June 1, 1943, because, at that time the unexpired portion of the term of office was less than a year. According to Section 69 of Article VII of the Constitution, vacancies occasioned by death, resignation, or otherwise, in the office of sheriff (or in the office of district judge or district attorney or clerk of court), shall be filled by appointment by the Governor if the unexpired portion of the term is less than a year. And by Section 12 of Article V of the Constitution the Governor is authorized to fill vacancies that occur during a recess of the Senate, in cases not otherwise provided for in the Constitution, by granting commissions which shall expire at the end of the next session of the Senate.

A successor to the late Sheriff Dauterive, for the full term of four years, will be elected in the next general state election, which, according to Section 2 of Act No. 224 of 1940, will be held on Tuesday the next day after the third Monday in April 1944. The third Monday in April 1944 will be the 17th day of April; hence the election will be held on Tuesday, the 18th day of April, 1944. According to Section 25 of Act No. 224 of 1940, it will be the duty of the Governor to issue a commission to the newly-elected sheriff at the expiration of thirty days after the date of his election, and the new sheriff may then qualify immediately. Accordingly, the successor to Sheriff Dauterive, for the full term of four years, may qualify and take possession of the office on May 19, 1944; which date will be less than a year after the date of the death of Sheriff Dauterive, June 1, 1943.

Sheriff Dauterive took his oath of office as sheriff on May 25, 1940, and the oath was filed and recorded in the office of the Clerk of Court in the Parish of Plaquemines on May 28, 1940, but the oath was not recorded or filed in the office of the Secretary of State until June 14, 1940. Because of that delay in the filing of the oath of office with the Secretary of State, it is contended that the four-year term of office of Sheriff Dauterive will not expire until June 14, 1944. The question whether Sheriff Dauterive, if he had lived, might object to his successor's taking possession of the office until June 14, 1944, is a question which does not arise in this case. In that respect the facts of the case are the same as were the facts in the case where Judge R. Emmett Hingle died and Judge Leander H. Perez was appointed by Governor Pleasant to fill the unexpired portion of the term of office of Judge Hingle. The appointment of Judge Perez by the Governor was contested on the ground that the unexpired portion of the term of Judge Hingle was more than a year at the time of his death. Judge Hingle took the oath of office and commenced his four-

year term on December 9, 1916. He died on December 4, 1919. Hence it was argued, in opposition to the authority of the Governor to appoint Judge Perez, that the unexpired portion of the term of Judge Hingle was more than a year at the time of his death. But it was pointed out on behalf of Judge Perez that the successor to Judge Hingle for the full term of four years would be elected on Tuesday the next day after the first Monday in November, 1920, and that, as the first day of November would fall on Monday in 1920, the election of the successor to Judge Hingle would be held on Tuesday, November 2, 1920, and that the successor might qualify thirty days after being elected, or say on December 2 or 3, 1920, which was less than a year after Judge Hingle's death. Accordingly, this court held in the case entitled In re Perez, 146 La. 373, 83 So. 657, 660, on January 12, 1920, that the unexpired portion of the term of office of Judge Hingle was less than a year at the time of his death, and therefore that the commission which the Governor had issued to Judge Perez to fill the unexpired portion of the term of Judge Hingle was valid, and that Judge Perez was entitled to take possession of the office. In the course of the opinion this court said: "The misfortune that put an end to the term or tenure of office of Judge Hingle has put aside the question whether he might have held office until the 9th of December, 1920, even though his successor might have qualified sooner. The question before the Governor was: When might a successor qualify for the full term of four years? The Governor's answer was: December 2, 1920; that is, less than a year

from the date of Judge Hingle's death. The election must be held on Tuesday the next day after the first Monday in November, 1920. It so happens that the 1st day of November will be Monday. Therefore the election will be held on the 2d day of November. The judge then elected may qualify 30 days after his election; say on the 2d or 3d day of December, 1920. The unexpired part of the term of the office made vacant by the death of Judge Hingle was, according to that calculation, less than a year; and, under the law, the Governor had reason to assume that he had authority to appoint a judge for the unexpired term."

There is nothing in the decision which this court rendered in the case of State ex rel. Palfrey v. Judges of Criminal District Court of Parish of Orleans, on January 5, 1942, 199 La. 232, 5 So.2d 756, that conflicts with the decision just cited, in the matter entitled In re Perez, 146 La. 373, 83 So. 657. The reason why the Governor did not have authority to appoint Campbell Palfrey Sheriff of the Criminal District Court for the Parish of Orleans, to fill the vacancy caused by the death of Sheriff George E. Williams, which occurred during the recess of the Senate, was that the filling of a vacancy in the office of Criminal Sheriff for the Parish of Orleans was otherwise provided for in Section 93 of Article VII of the Constitution, giving the Judges of the Criminal District Court the authority to fill the vacancy. Section 12 of Article V of the Constitution would have given the Governor authority to fill the vacancy in that case by the appointment of Palfrey, if the filling of the vacancy had not been

otherwise provided for in the Constitution. But Section 12 of Article V is qualified by the declaration that the Governor shall have the power to fill vacancies occurring during a recess of the Senate only in cases not otherwise provided for in the Constitution. And Section 93 of Article VII of the Constitution, which was applicable to Palfrey's case, makes provision for filling vacancies only in the office of civil sheriff, clerk of the civil district court, recorder of mortgages, and register of conveyances, in which offices vacancies shall be filled temporarily by the judges of the civil district court, and the vacancies in the office of criminal sheriff, clerk of the criminal district court, clerk and constable of the city courts, in which offices vacancies shall be filled temporarily by the judges of the courts to which they are attached. That section of Article VII of the Constitution has no reference whatsoever to any other office except the offices just named. Hence the decision in the Palfrey case is not a precedent for this case, or for any case where a vacancy is to be filled in any public office, other than the office of civil sheriff, clerk of the civil district court, recorder of mortgages, register of conveyances, criminal sheriff, clerk of the criminal district court, or clerk or constable of a city court, in the Parish of Orleans.

All of this was explained fully in the opinion rendered in the Palfrey case, 199 La. pages 237 and 238, and 5 So.2d 757 and 758, thus:

"But the only authority conferred upon the Governor to fill vacancies by making appointments during a recess of the Senate is that which is conferred by Section 12 of Article V of the Constitution, and is limited to cases where the filling of the vacancy is not otherwise provided for in the Constitution,—thus:

" 'The Governor shall have the power to fill vacancies that may occur during the recess of the Senate, in cases not otherwise provided for in this Constitution, by granting commissions which shall expire at the end of the next session;' et cetera.

"That section in the Constitution does not give the Governor authority to fill the vacancy in this instance [In the Palfrey case] by making a recess appointment, without the advice and consent of the Senate, or without confirmation by the Senate, because the filling of the vacancy in this instance is otherwise provided for in the Constitution,—in Section 93 of Article VII, giving the Judges of the Criminal District Court the authority to fill the vacancy temporarily, or until it is 'filled by election or appointment, as provided by law.' There is no reason why the writers of the Constitution should have provided for two temporary fillings of the vacancy in a case like this [Palfrey case],—one temporary filling of the vacancy by the judges of the court whose orders and decrees the sheriff executes,—and another temporary filling of the vacancy by the Governor, by granting a commission which shall expire at the end of the next session of the Legislature."

The difference between the present case and the Palfrey case is explained even more thoroughly in the Livaudais case, 201 La. pages 174–177, and 9 So.2d pages 510–

512, from which the following excerpts are quoted, thus:

"Under authority of section 69 of article 7 of the Constitution the Governor had authority to fill the vacancy caused by the removal of Judge Meraux from office. That section of the Constitution provides that vacancies caused by death, resignation, or otherwise, in the office of district judge, district attorney, sheriff, or clerk of the district court, where the unexpired portion of the term is less than one year, shall be filled by appointment by the Governor, with the advice and consent of the Senate; and in cases where the unexpired portion of the term is one year, or more, the vacancy shall be filled by special election, to be called by the Governor, and held within sixty days after the occurrence of the vacancy. The unexpired portion of the term of office of Judge Meraux was less than a year at the time of his removal from office. And, as the vacancy occurred during the recess of the Senate, the Governor had authority under section 12 of article 5 of the Constitution, to grant a commission which shall expire at the end of the next session of the Senate. In the case of State ex rel. Williams v. Cage, Judge, 196 La. 341, 199 So. 209, it was held that the Governor would have had the right to fill a vacancy in the office of judge of the Civil District Court for the Parish of Orleans, if the unexpired portion of the term of office had been less than a year when the vacancy occurred. * * *

"District Attorney Perez and Sheriff Dauterive, in the suit in which they have obtained the order from Judge Himel commanding Judge Livaudais to show cause why he should not be enjoined from discharging his duties as judge in the district court in and for the 25th Judicial District, contended that Governor Jones did not have authority under section 69 of article 7 or under section 12 of article 5 of the Constitution to fill the vacancy caused by the removal of Judge Meraux from office by making an appointment without obtaining the advice and consent of the Senate. They cite the case of State ex rel. Palfrey v. Judges of Criminal District Court, 199 La. 232, 5 So.2d 756. In that case it was held that the Governor did not have the right to make an appointment to fill a vacancy in the office of Criminal Sheriff for the Parish of Orleans, without obtaining the advice and consent of the Senate, notwithstanding the vacancy occurred during a recess of the Senate and notwithstanding the unexpired portion of the term of office was less than a year. But the reason for the decision was that section 12 of article 5 authorizes the Governor to make recess appointments to fill vacancies only in cases not otherwise provided for in the Constitution. And with regard to the office of Criminal Sheriff for the Parish of Orleans it is provided in section 93 of article 7 that vacancies in that office shall be filled by appointment by the Judges of the Criminal District Court. With regard to the office of District Judge, the only provision for filling a vacancy is in section 69 of article 7, where it is provided that the vacancy shall be filled by appointment by the Governor with the advice and consent of the Senate where the unexpired portion of the term is less than a year, and that the va-

cancy shall be filled by a special election called by the Governor if the unexpired portion of the term is a year or more. The provisions of that section are subject, of course, to the provision in section 12 of article 5, giving the Governor authority to fill vacancies occurring during a recess of the Senate, in cases not otherwise provided for in the Constitution, by granting commissions which shall expire at the end of the next session of the Senate. * * * The decision in State ex rel. Palfrey v. Judges of Criminal District Court is not at all applicable to this case because in this case the filling of the vacancy is provided for by appointment by the Governor under section 69 of article 7 and section 12 of article 5, of the Constitution, and is not otherwise provided for in the Constitution. In Palfrey's case the filling of the vacancy was otherwise provided for in the Constitution, in section 93 of article 7, which declared that the Judges of the Criminal District Court should fill the vacancy. Section 12 did not authorize the Governor to make the recess appointment in that case because the authority granted to the Governor by that section is limited to cases not otherwise provided for in the Constitution."

█ The present suit was brought by Walter J. Blaize, under authority of the commission issued by the Governor on June 7, 1943, appointing Blaize sheriff for the unexpired portion of the term of the late Sheriff Dauterive. The suit was instituted in the Parish of East Baton Rouge against Jerome A. Hayes, Supervisor of Public Funds, and Rufus W. Fontenot, Collector

of Revenue, for the purpose of testing the title to the office of tax collector. The sheriffs, outside of the Parish of Orleans, are ex officio tax collectors. In case of a vacancy in the office of sheriff, occasioned by death, resignation or otherwise, the coroner does not succeed to the office of sheriff, or become sheriff, but merely performs the duties pertaining strictly to the office of a sheriff until the vacancy is filled by appointment or election as the case may be. But the coroner has nothing to do with the office of tax collector. On that subject Section 71 of Article VII provides: "Except in the parish of Orleans, the coroner shall act for and in place of the sheriff, whenever the sheriff shall be a party interested, and whenever there shall be a vacancy in the office of sheriff, until such vacancy shall be filled, and if there be no coroner then the district court may make a temporary appointment, but the coroner shall not, during such vacancy, discharge the duties of tax collector."

█ It is plain therefore that in case of a vacancy in the office of sheriff the coroner acts for and in the place of the sheriff, only as sheriff, "but the coroner shall not, during such vacancy, discharge the duties of tax collector." By Act No. 280 of 1938 it is made the duty of the Supervisor of Public Funds to take charge and control of the office of tax collector in case of a vacancy in the office of sheriff and ex officio tax collector, and to perform the duties of the office of tax collector until a successor to the sheriff is appointed or elected, as the case may be, in the manner provided by the constitution and laws of the State.

Accordingly, in this instance, the Supervisor of Public Funds took charge and control of the office of tax collector for the Parish of Plaquemines when the office became vacant by the death of Sheriff Dauterive, and is continuing to hold the office and to perform the duties of tax collector, notwithstanding the appointment of Walter J. Blaize to the office of sheriff and ex officio tax collector for the unexpired portion of the term of Sheriff Dauterive. The record discloses that the Coroner of the Parish of Plaquemines refused to recognize the validity of the appointment of Blaize and therefore refused to surrender to him the office of sheriff. The coroner claims that he succeeded to the office of sheriff when Sheriff Dauterive died; and the coroner contends that the unexpired portion of the term of Sheriff Dauterive was more than a year at the time of his death, and hence that the Governor was without authority to appoint Blaize sheriff for the unexpired portion of the term. Therefore, in order to test the validity of the Governor's appointment of Blaize as sheriff and ex officio tax collector, he brought this mandamus suit against the Supervisor of Public Funds, at his official domicile, in Baton Rouge, to compel the supervisor to surrender to the plaintiff the office of tax collector for the Parish of Plaquemines. It appears that the Collector of Revenue, who also has his official domicile and office in Baton Rouge, contended that, under the provisions of Section 26 of Article VI of the Constitution, and notwithstanding Act No. 280 of 1938, it became his duty to take charge and control of the office of tax collector when the office became vacant by the death of the sheriff and to continue to perform the duties of the office until the vacancy in the sheriff's office should be filled. The plaintiff, in this case, therefore, made the Collector of Revenue a party defendant, in order to quiet any claim that he might assert to have charge and control of the office of tax collector for the Parish of Plaquemines.

In answer to the suit, the Supervisor of Public Funds and the Collector of Revenue both contested the validity of the appointment of Sheriff Blaize, on the ground that the unexpired portion of the term of office of the late Sheriff Dauterive was more than a year at the time of his death. The case was submitted to the district court on a stipulation of facts, there being no dispute about the facts. The judge of the district court decided that the unexpired portion of the term of office of the late Sheriff Dauterive was less than a year, according to the decision which this court had rendered in the matter entitled In re Perez, 146 La. 373, 83 So. 657, and hence that the commission which the Governor had issued to Blaize, appointing him sheriff for the unexpired portion of the term of the late Sheriff Dauterive, was a valid commission and appointment, and that Sheriff Blaize was entitled to take charge and control of the office of tax collector. The judge therefore rendered judgment in favor of the plaintiff accordingly on June 17, 1943. The defendants, in order to obtain a final adjudication on the question of validity of the appointment of Blaize as sheriff and ex officio tax collector applied to this court for writs of certiorari and pro-

hibition. The relators averred that the question of validity of the appointment of Blaize as sheriff and ex officio tax collector, for the unexpired portion of the term of the late Sheriff Dauterive, was a question of public importance, and that, as this court was about to go into vacation, there was no adequate remedy by appeal, for obtaining a prompt and final decision of the question.

■ Three oppositions to the granting of writs of certiorari and prohibition have been filed in this court. One of the oppositions was filed by five residents of Plaquemines Parish, averring that they were appointed deputy sheriffs by the coroner, acting sheriff, on June 1, 1943, after the death of Sheriff Dauterive. The opponents aver that they applied to the district court for a suspensive appeal from the judgment rendered in favor of Blaize on June 17, 1943, and that the judge of the district court refused to grant them a suspensive appeal. We see no reason why the five deputies should be allowed to stay execution of the judgment by appealing from it; but the question whether they were entitled to an appeal from the judgment is not presented in this case, because they are not asking this court in this case to mandamus the judge of the district court to grant them an appeal, but are merely opposing the petition of the defendants in this case for writs of certiorari and prohibition. The five deputies merely annex to their opposition a carbon copy of the petition which they filed in the district court for an appeal from the judgment of that court. They base their claim to the right of appeal—and base their opposition in this pro-ceeding—upon the contention that under Section 71 of Article VII of the Constitution the title to the office of sheriff became vested in the coroner by the death of the late Sheriff Dauterive. The five opponents contended in their petition for an appeal—and contend in their opposition filed in this court—that notwithstanding the dates which we have given, the unexpired portion of the term of the late Sheriff Dauterive was more than a year at the time of his death. That contention, of course, is disposed of by the ruling in the case entitled In re Perez, 146 La. 373, 83 So. 657. The five deputy sheriffs have no such interest in this suit as to entitle them to the right to oppose the petition of the defendants for writs of certiorari and prohibition; and if it should be conceded that the opponents have a right to make the opposition there would be no merit in the opposition.

In the case entitled In re Perez, 146 La. 373, 83 So. 657, 658, the Clerk of the District Court, Frank J. Lobrano, and the District Attorney, N. H. Nunez, filed interventions, opposing the demand of Judge Perez to be allowed to take possession of the office of district judge under his appointment for the unexpired portion of the term of the late Judge Hingle. Both of the interveners contended that the unexpired portion of the term of Judge Hingle was more than a year at the time of his death, and hence that the Governor had no authority to appoint Judge Perez. The clerk of court contended that the proceeding by Judge Perez should have been brought against him, the clerk of court, and he complained that he was not even notified of the proceeding. The district

attorney based his right to intervene upon the averment (which we quote literally from the report of the case) "that, as district attorney, he was ex officio the representative of the people of the judicial district". But we held that neither of the interveners had any standing in court to oppose the demand of Judge Perez for possession of the office under his appointment for the unexpired portion of the term of Judge Hingle. In disposing of the interventions the court declared: "It is true, the district attorney and the clerk of the Twenty-Ninth judicial district court, as interveners in this proceeding, ask us to go behind the commission issued to Judge Perez and treat the appointment as invalid. They say that Judge Hingle qualified as judge on the 9th of December, 1916 and that therefore his four-year term of office would not have expired until the 9th of December, 1920, if he had lived until that date. The interveners therefore argue that the unexpired part of the term of Judge Hingle was more than a year at the date of his death, the 4th of December, 1919; and that the vacancy should be filled by a special election. Our opinion is that the interveners have no standing in this case to question the validity of the commission of Judge Perez."

▮ Another opposition to the petition for writs of certiorari and prohibition was filed in this court by several hundred—apparently as many as 822— residents and registered voters and electors of the Parish of Plaquemines, including 94 property taxpayers residing in the parish. They also have attached to their opposition a copy of a petition which they filed in the district court for a suspensive appeal from the judgment rendered in favor of the plaintiff, Blaize, on June 17, 1943. These opponents do not show any special interest that might entitle them to a suspensive appeal, but if it should be conceded that they had such an interest as might have entitled them to a suspensive appeal, there is no such issue tendered by them in this proceeding, because they are not asking in this case for a mandamus to compel the judge of the district court to grant them an appeal. The only interest which they claim for opposing the granting of writs of certiorari and prohibition in this case is expressed in the third paragraph of the copy of their petition filed in the district court for a suspensive appeal, where they allege that, as citizens and taxpayers of the Parish of Plaquemines, they contribute to the public funds from which the salary and expenses of the sheriff and ex officio tax collector and his deputies are paid, and hence that they, the opponents, "are entitled to have said office occupied only by a duly qualified officer, as provided by the Constitution of this State." A sufficient answer to that allegation is that, when this court decides finally in this case that the appointment of the plaintiff, Walter J. Blaize, as sheriff and ex officio tax collector, is a valid appointment, the opponents may depend upon it that the office will be "occupied only by a duly qualified officer, as provided by the Constitution of this State."

The third opposition to the granting of writs of certiorari and prohibition in this case was filed by the Police Jury of the Parish of Plaquemines, through its presi-

dent. The claim of the police jury to the right to oppose the granting of supervisory writs is founded upon the averment that the police jury is the principal taxing body and receives the largest revenues from the collection of ad valorem taxes, license taxes and other taxes collected by the tax collector, and hence that the police jury "is entitled to have its taxes and licenses collected by none other than a constitutionally qualified Tax Collector for said Parish." A sufficient answer to this, of course, is that when this court pronounces the judgment of the district court correct the police jury will be assured that its licenses and taxes will be collected by none other than a constitutionally qualified tax collector.

█ In all of the three oppositions the opponents contend that the judgment rendered in favor of the plaintiff on June 17, 1943, was obtained by prearrangement and collusion and fraud between the plaintiff and the defendants. There is a distinction between obtaining a judgment by collusion and obtaining a judgment for the purpose merely of testing the validity of something the validity of which is in doubt or dispute. The only suits in which the consent of the plaintiff and defendant to obtain a judgment in favor of the plaintiff constitutes collusion and fraud are suits for divorce or for separation from bed and board. The reason for that is that the Civil Code, in article 140, and public policy itself, forbid the obtaining of a divorce by consent of the parties. The law condemns also suits in which a debtor and creditor conspire to defraud another creditor. But there is no collusion or fraud or

wrongdoing in the filing and prosecuting of a test case for the purpose of obtaining a judicial decree of a court of final jurisdiction on a question which is disputed, or on which some doubt has been cast, even though both parties, plaintiff and defendant, desire that the suit shall be decided in a given way. We have examples of this every day, in suits to test the validity of proposed tax levies, or proposed bond issues, and in suits to test the title to real estate. Such a lawsuit is not objectionable to the courts merely because the parties to the suit believe that it should and desire that it shall be decided in a given way. That is particularly true where the question to be decided is a question of public importance, as in this case, where the title to a public office is in question.

██ The opponents in this proceeding contend that the district court in Baton Rouge did not have jurisdiction to decide the case, and that the district court in Plaquemines Parish is the only court that had original jurisdiction. The reason why the suit was brought properly in Baton Rouge is that both of the defendants have their official domicile in the Parish of East Baton Rouge. They contested the title to the office of Tax Collector. No one else was disputing Blaize's title to the office of sheriff, except the coroner of the Parish of Plaquemines, who claimed only such authority as came to him by virtue of Section 71 of Article VII of the Constitution. Under that section he had no color of title to the office of sheriff, but merely performed the duties pertaining to the office of sheriff until a successor to the late sher-

iff was appointed. The coroner is not a party to this suit. It may be conceded that, if Blaize had seen fit to sue the coroner, the place in which to institute the suit would have been in Plaquemines Parish. But, as the provisions of Section 71 of Article VII of the Constitution did not invest the coroner with any title or color of right to the office of sheriff or tax collector of the Parish of Plaquemines, there is no good reason why Blaize should have sued the coroner to have it judicially declared that the appointment of Blaize to the office of sheriff and ex officio tax collector was a valid appointment. And there is no doubt that, as Blaize had the right to bring this suit against the Supervisor of Public Funds and the Collector of Revenue, to test the title to the office of tax collector, the only parish in which the suit could have been instituted against them is the Parish of East Baton Rouge.

Adverting now to the merits of this case, it might be argued that the Governor may not be prompt in issuing a commission to the sheriff who will be elected for the four-year term on April 18, 1944, —and hence that the unexpired portion of the term for which the late Sheriff Dauterive was elected in 1940 may be extended in that way beyond a year from the date of his death, June 1, 1943. The answer to that argument is that it must be presumed that the Governor will perform his duty promptly, by issuing a commission to the newly-elected sheriff on or about May 19, 1944, being 30 days after the date of his election. That is less than a year from the date of the death of Sheriff Dau-

terive,—June 1, 1943. If the fact that the Governor might defer the performance of his duty to issue a commission to the newly-elected sheriff on May 19, 1944, should be considered a sound argument in this case, it would never be possible to determine the length of the unexpired portion of the term of office, when a vacancy is caused by death. It is a mathematical certainty that the rule which was applied in the case entitled In re Perez, 146 La. 373, 83 So. 657, is the correct rule, and is the only possible rule by which it could be determined in a case like this whether the vacancy in the office should be filled by appointment by the Governor or by a special election to be called by him, under the provisions of Section 69 of Article VII, and of Section 12 of Article V, of the Constitution. According to the plain terms of these provisions in the Constitution, and the ruling in the case entitled In re Perez, 146 La. 373, 83 So. 657, the writs of certiorari and prohibition prayed for by the defendants in this case should be denied on the ground that the judgment of the district court is correct.

For these reasons the petition for writs of certiorari and prohibition is denied.

HIGGINS, FOURNET, and PONDER, JJ., dissent.

FOURNET, Justice (dissenting).

I cannot subscribe to the majority opinion of the court in this matter for the reason that it, in effect, decides the title to the office of sheriff of Plaquemines parish without the party who is in actual possession of the office (Dr. B. R. Slater,

the coroner of the parish) and claiming the right thereto by virtue of the express provisions of Section 71 of Article 7 of the Constitution of 1921, being made a party. In view of this fact, it is elementary that the action of this court in this instance cannot in any way affect the rights of Dr. Slater. Smith v. Little Pine Lumber Co., 150 La. 720, 91 So. 165, and Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22, 132 A.L.R. 741. Consequently, the declaration in the majority opinion that the relator is the lawfully appointed sheriff and tax collector of Plaquemines parish and entitled to possession of that office is nothing more than useless and vain dictum, deciding nothing. Even if Blaize, armed with this decision by the court, seeks to oust the coroner as the sheriff of the parish, the coroner could not be compelled to respect the same any more than he could be compelled to respect an order of the "Zulu King."

Moreover, the courts are not authorized to try title to offices by injunction or mandamus. The proper procedure in such cases, where the person claiming title to the office is not in actual possession thereof, is by an act of intrusion into office. Guillotte v. Poincy, 41 La.Ann. 333, 6 So. 507, 5 L.R.A. 403; Goldman v. Gillespie, 43 La.Ann. 83, 8 So. 880; and State v. Turner, 152 La. 828, 829, 94 So. 411.

Besides, I am of the opinion that this case was tried in a court having no jurisdiction of the cause (the court of East Baton Rouge parish) for there was no real controversy or contest in the case. The entire matter was conceived, concoct-

ed, and tried between parties who are not now and never have been in possession of the office of either sheriff or tax collector of Plaquemines parish, and while there is an agreed statement of facts by which the court of East Baton Rouge was sought to be given jurisdiction of the cause in so far as it affected the tax collector for the parish of Plaquemines, that is, that the respondents were in possession of the books of that office, the record discloses that statement to be incorrect.

I do not believe this court is justified in sanctioning such procedure, particularly when the same is opposed by more than 800 citizens, including taxpayers, the deputy sheriffs who hold office under Dr. Slater, as well as the Police Jury, all charging that the entire proceedings were conceived in collusion and fraud. Furthermore, it appears that these parties have sought to appeal from the case under the right and authority granted them to do so under Article 571 of the Code of Practice, which was denied them in the lower court and these same parties are now before this court asking that it grant such an appeal or exercise its supervisory jurisdiction to compel the trial judge to do so. In refusing them the suspensive appeal to which they are entitled as a matter of law and right, particularly in view of the charges of collusion and fraud in the record and the serious constitutional question raised as to the right of the governor to appoint in the instant case, the Supreme Court of this state has not only placed its stamp of approval on the alleged collusion and fraudulent acts of the plaintiff and defendants in securing the rendition of this judgment affecting

the rights of third persons not of record in the case, but has decided nothing it can enforce and has only laid the ground work for great confusion and disorder.

For these reasons, I respectfully dissent.

HIGGINS, Justice (dissenting Nos. 37,190, 37,210, 37,211).

The plaintiff, claiming to be the duly and legally appointed Sheriff of Plaquemines Parish, to succeed the late Sheriff L. Decomine Dauterive, instituted mandamus and injunction proceedings against Jerome A. Hayes, Supervisor of Public Funds, and Rufus W. Fontenot, Collector of Revenue, in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, to have determined the question of title to the office.

The Supervisor of Public Funds has authority to audit the Sheriff's accounts and the Collector of Revenue has the right and authority to collect taxes where a Sheriff has died and the Coroner is acting as Sheriff.

The plaintiff alleges that the unexpired term of the deceased Sheriff was less than one year and, therefore, under the provisions of the Constitution, the Governor had the authority to appoint him to the office.

The legality of the plaintiff's appointment was questioned on the ground that the unexpired term of the deceased Sheriff was more than a year and, therefore, it was the mandatory duty of the Governor, under the provisions of the Constitution, to call an election for the purpose of electing his successor.

The case was tried on an agreed stipulation of facts and the defendants consented to waive the legal delays for regular trial.

The judge of the district court rendered judgment in favor of the plaintiff, recognizing him as the duly and legally appointed Sheriff of Plaquemines Parish and issued a writ of mandamus requiring the Supervisor of Public Funds to turn over to him the records of the office and also issued an injunction restraining the Collector of Revenue from attempting to act as Tax Collector in the Parish.

Some eight hundred taxpayers, electors and residents of Plaquemines Parish, the Deputy Sheriffs appointed by the Coroner, as Acting Sheriff, and the members of the Police Jury of Plaquemines Parish, filed motions in the district court claiming that under the provisions of Article 571 of the Code of Practice they were entitled to a suspensive appeal. The trial judge denied the motions on the ground that the movers were without sufficient pecuniary interest in the case.

The defendants applied to this Court for writs of certiorari and prohibition under our supervisory jurisdiction.

The taxpayers, the Deputy Sheriffs and the Police Jury of Plaquemines Parish filed a petition in this Court alleging that the plaintiff and the defendants in the mandamus and injunction proceedings, by collusion and fraud, had sought to deprive the Twenty-Fifth Judicial District Court for the Parish of Plaquemines of its jurisdiction to hear and determine an intrusion into office suit which the plaintiff would be compelled, under the law, to file against the

Coroner, as acting Sheriff, to be recognized as the Sheriff under the purported appointment by the Governor; that through collusion and fraud they had sought to evade the law which required an intrusion suit to be filed to test title to the office and resorted to injunction and mandamus proceedings, through which, under the settled jurisprudence, title to office cannot be tested or determined; that through collusion and fraud they had illegally attempted to have the court determine title to the office when the real parties at interest, including the Coroner, as acting Sheriff, were not before the court, with a view of indirectly binding them and collusively obtain such a judgment; that the record shows there was collusion between the plaintiff and the defendants because the affidavit he signed, annexed to his petition for writs of mandamus and injunction, was dated and signed prior to the time that the Governor issued the alleged and purported commission to him as Sheriff; that the parties stipulated certain facts which are untrue and contrary to the real facts in the case, for instance, that the Supervisor of Public Funds had possession of the books and records of the office, whereas, it appears from his letter that he had never taken possession of the books and records to audit them; that the Coroner, as acting Sheriff, and the Police Jury were the only ones in possession of the books, records and office of the Sheriff of Plaquemines Parish; that the plaintiff and the defendants, after the case had been regularly set for trial, advanced the hearing thereof on the merits by several days, the defendants waiving their preliminary rights and delays; that the State Supervisor of Public Funds has no interest in this litigation—simply having the right under the law to audit the Sheriff's books; that the Collector of Revenue has no interest in having determined who is the Sheriff of Plaquemines Parish, because his sole right under the statutory law is to act as Tax Collector as long as the Coroner of the Parish is acting as Sheriff and occupying that office as such; that, obviously and manifestly, the taxpayers, the deputy sheriffs, and the Police Jury, whose taxes, revenues and salaries, respectively, are affected, and the Coroner who occupies the office of the Sheriff by virtue of the Constitution, upon the death of Sheriff Dauterive, are clearly parties at interest; and that the plaintiff and the defendants have sedulously avoided filing any proceedings or pleadings through which the real parties at interest in this case would be made parties thereto.

The jurisprudence is firmly established in this State that a taxpayer has a right to invoke judicial authority to have determined the legality of any act which would tend to increase the burden of taxation or otherwise unjustly affect the taxpayer or his property, and the mere fact that the taxpayer's interest is small and incapable of accurate determination, is not a sufficient reason to deprive him of his right to resort to court, because regard is had for the public character of the proceeding in which the taxpayers are interested and have complained. Donaldson v. Police Jury, 161 La. 471, 109 So. 34; Borden v. Louisiana State Board of Education, 168 La. 1005, 123 So. 655, 67 A.L.R. 1183;

Graham v. Jones, 198 La. 507, 3 So.2d 761; Stewart v. Stanley, 199 La. 146, 5 So.2d 531, 535; Ricks v. Close, 201 La. 242, 9 So.2d 534; Black v. New Orleans Ry. & Light Co., 145 La. 180, 82 So. 81.

Article 571 of the Code of Practice reads, as follows: "The right of appeal is given, not only to those who were parties to the cause in which a judgment has been rendered against them, but also to third persons not parties to such suit, when such third persons allege that they have been aggrieved by the judgment."

In the instant case, the taxpayers, the deputies and the Police Jury have a definite pecuniary and serious interest and will be aggrieved in the event the unexpired term of the deceased Sheriff Dauterive was more than a year because then the Governor will be without right and authority to appoint his successor and would be compelled, under the mandatory provisions of the Constitution, to call an election for that purpose. The fact that there are serious charges of collusion and fraud against the plaintiff and the defendants, to deprive the real parties at interest of their day in court and to have their rights prejudged in a consent proceeding unquestionably shows that they would be aggrieved by such a judgment and, therefore, they are, as a matter of right, entitled to appeal under the above quoted Article. The prayer of their petition that we invoke our supervisory jurisdiction and grant the suspensive appeal ourselves or issue a writ of mandamus to the district judge to compel him to grant them a suspensive appeal, as a matter of right, is well founded under the law and should have been granted.

The serious charges of fraud and collusion in this case should be inquired into by the court contradictorily with the parties who have made them and who have a real and substantial interest in the case and not those who have for all practical purposes consented to the judgment.

In the recent case of 'United States v. Johnson, 63 S.Ct. 1075, 1076, 87 L.Ed. 1413, the Supreme Court of the United States refused to consider the case and set aside the adjudication therein, it having found the action to be a collusive one and that there were no genuine adversary relations between the parties. The Court stated: "The Government does not contend that, as a result of this cooperation of the two original parties to the litigation, any false or fictitious state of facts was submitted to the court. But it does insist that the affidavits disclose the absence of a genuine adversary issue between the parties, without which a court may not safely proceed to judgment, especially when it assumes the grave responsibility of passing upon the constitutional validity of legislative action. Even in a litigation where only private rights are involved, the judgment will not be allowed to stand where one of the parties has dominated the conduct of the suit by payment of the fees of both. Gardner v. Goodyear Dental Vulcanite Co., 131 U.S.Append. ciii, 21 L.Ed. 141."

Furthermore, since the early case of Guillotte v. Poincy, 41 La.Ann. 333, 6 So. 507, 5 L.R.A. 403, the jurisprudence has been uniform that the right or title to office cannot be litigated and determined in injunction and mandamus proceedings

where the claimant to the office is not in possession thereof. The issue as to the right or title to office can only be properly presented to court by and through an intrusion into office proceeding against the de facto claimant. State ex rel. Bolin v. Webster Parish School Board et al., La. App., 157 So. 142, 145; Goldman v. Gillespie, 43 La.Ann. 83, 8 So. 880; and State ex rel. Bourg v. Turner, 152 La. 828, 829, 94 So. 411.

In the instant case, the plaintiff does not claim or pretend that he is in possession of the office but, on the contrary, he admits that the Coroner, as acting Sheriff, is in possession and custody of the office and refuses to yield it to him.

This Court has consistently and uniformly granted to persons who were not parties in a particular lawsuit the right to be heard on the issues, the decision on which would adversely affect their rights. We have consolidated cases where the same issues were involved and where there were different parties. We have withheld our opinion in cases until the parties in another lawsuit involving the same question had an opportunity to argue and present their case to us and we have liberally allowed parties to appear before the Court where they claimed their rights were adversely affected or they were aggrieved by a judgment—all of which was done in the interest of justice and to prevent a premature determination of the rights of parties who were not before the Court. This is particularly true in matters of public interest, as a great many cases of the docket of this Court will reflect. Graham v. Jones, supra.

The mere fact that the various documents in this case were filed under three separate numbers does not for one moment change the fact that this is one lawsuit, and, therefore, all of the petitions and oppositions to them should be considered together, otherwise the Court would not have a complete picture of the case before it.

It is my view that it is error for the Court to refuse to permit real parties at interest to contradictorily present to the court the serious issues that have been raised by them. The judgment of the district court and the majority decision of this Court having denied the interested parties herein the right to present these issues do not settle the case but are only provocative of additional litigation because they certainly cannot foreclose and determine the rights of the real parties at interest, some of whom the court refused to hear and the other, the Coroner and acting Sheriff, who stood on his rights to require a proper suit in the court having jurisdiction over him.

In the case of Chase National Bank v. City of Norwalk, 291 U.S. 431, 441, 54 S.Ct. 475, 479, 78 L.Ed. 894, 901, the Court said: "The law does not impose upon any person absolutely entitled to a hearing the burden of voluntary intervention in a suit to which he is a stranger. Whether under the Ohio practice it would have been possible for the trustee to intervene, we have no occasion to determine. Unless duly summoned to appear in a legal proceeding, a person not a privy may rest assured that a judgment recovered therein will not affect his legal rights." See, also, Hansberry et al. v. Lee et al., 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22, 132 A.L.R. 741.

The plaintiff proceeded only against the defendants who were not seriously and bona fidely questioning his right to the office of Sheriff but were consenting thereto. He thereby sought to avoid bringing a suit against the real party at interest, who is the Coroner of the Parish of Plaquemines, acting as Sheriff thereof, and sought to have the title to the office determined before a court which did not have jurisdiction of an intrusion into office suit between the plaintiff and the Coroner, as acting Sheriff. Obviously, the majority decision is nothing more than a premature expression of opinion on the merits of the case as the real party, the de facto officer, is not even before the Court. The result of this is that although under the established jurisprudence of the United States Supreme Court the Coroner, as acting Sheriff, is not bound by the judgment, nevertheless, if he elects to contest the case with the plaintiff, he will be at a serious disadvantage on the issues presented by the merits of the controversy because the majority members of this Court have previously expressed their opinion thereon without knowing what other issues he might make, other provisions of the Constitution he might invoke, other authorities he might cite, and other contentions he might rely upon that were not presented by the defendants in the alleged fraudulent, collusive and consent proceedings.

For these reasons, I respectfully dissent.