152 So.2d 41

**Dr. Boyd M. WOODARD**

**v.**

**James S. REILY, Commissioner of Administration, State of Louisiana, et al.**

**No. 46560.**

April 8, 1963.

Dissenting Opinion April 9, 1963.

Robert L. Roland of Watson, Blanche, Wilson, Posner & Thibaut, Baton Rouge, Jack P. F. Gremillion, Atty. Gen., Carroll Buck, 1st Asst. Atty. Gen., John E. Jackson, Jr., Asst. Atty. Gen., for defendants-appellants.

Ogden, Woods, Henriques & Rives, by Charlton B. Ogden, II, New Orleans, for plaintiff-appellee.

HAMLIN, Justice.

Dr. Boyd M. Woodard, alleging that he was a taxpayer and resident of the State of Louisiana, brought suit against James S. Reily, Commissioner of Administration, Roy R. Theriot, Comptroller, and A. P. Tugwell, Treasurer, in their official and executive capacities as Officers of the State of Louisiana; he prayed that they be ordered to show cause why writs of preliminary injunction should not issue as follows:

"To: Honorable A. P. Tugwell, Treasurer, and Honorable Roy R. Theriot, Comptroller, ordering and commanding these two defendants to honor all appropriations made by Act 75 of the 1962 Legislature and to pay same without regard to any contingencies whatsoever, either unconstitutionally established by Sections 3, 4, 5, 6, 7, 8, 9 and 11 of Act 75 of the Regular Session of the Louisiana Legislature of 1962 or sought to be exercised by de-

fendant, Honorable James S. Reily, Commissioner of Administration, pursuant to R.S. 39:42, 52, 53, 54, 55, 56, 57, 95, 96, 97, 231 and 233 or unconstitutionally assumed or by any other alleged authority.

"To: Honorable James S. Reily, Commissioner of Administration, enjoining, restraining and prohibiting said defendant from exercising or attempting to exercise any of the functions attempted to be delegated to him or his officers, agents, employees and counsel and/or those persons in active concert or participation with him under the alleged authority contained in Sections 3, 4, 5, 6, 7, 8, 9 and 11 of Act 75 of the Regular Session of the Louisiana Legislature of 1962 and/or R.S. 39:42, 52, 53, 54, 55, 56, 57, 95, 96, 97, 231 and 233.

"That these injunctions issue not only to defendants, but as well to their officers, agents, employees and counsel and those persons in active concert or participation with them.

\*    \*    \*    \*    \*    \*

"That in due course permanent injunctions issue in the same form and substance as to preliminary injunctions prayed for hereinabove."

Plaintiff attacked the constitutionality of Sections 3, 4, 5, 6, 7, 8, 9 and 11 of Act 75 of 1962, the General Appropriations Act,

and the constitutionality of LSA–R.S. 39:-42, 52, 53, 54, 55, 56, 57, 95, 96, 97, 231 and 233. He alleged that the continued actions of the defendants in the manner described in his petition, would cause irreparable injury to him and other taxpayers similarly situated. He further stated that he was attaching exhibits which would illustrate specific unlawful and unconstitutional acts of the defendants. Plaintiff prayed that the defendants, their officers, agents, employees, counsel, and any persons in active concert or participation with them, be enjoined from taking any action whatsoever under the alleged unconstitutional provisions.

In answer to plaintiff's petition, defendant Tugwell, appearing through Jack P. F. Gremillion, Attorney General of the State of Louisiana, and other counsel, averred in part:

"\* \* \* respondent avers that your respondent as Treasurer of the State of Louisiana has honored warrants drawn on the State Treasury by the State Comptroller in his ministerial capacity, and will continue to do so until or unless he is enjoined by this Honorable Court. Except in the instances hereinafter set forth, and except in those cases where there may not be a specific appropriation or a specific sum to a designated official or agency, this said respondent has and will continue to honor warrants drawn upon the Treas-

ury by the said Comptroller, the exceptions particularly designated are as follows:

\* \* \* \* \* \*

"Your respondent is a member of the State Budget Committee created under authority of R.S. 17:88, the functions of which said Board are clearly set forth in the said Section of Revised Statutes of 1950 which is made a part hereof by reference.

\* \* \* \* \* \*

"That despite the fact that appropriations have been made to the parish school boards throughout the State, your respondent *has been required to honor payment of appropriations to certain school boards,* dependent upon directives and proclamations issued by the Division of Administration and by the Legislative Budget Committee, without due regard to the adoption of the said budgets pursuant to R.S. 17:88, as illustrated by the attached exhibits made a part hereof, each of which has been properly identified.

\* \* \* \* \* \*

"That respondent in his official capacity and in the performance of his ministerial duties is required to assume constitutionality of legislative acts, and he will continue to abide by the same in all respects until or unless he is restrained by this Honorable Court."

Defendant Tugwell concluded with a prayer for dismissal of plaintiff's suit.

Defendant Theriot, also appearing through the Attorney General and other counsel, answered plaintiff's petition, averring in part:

" \* \* \* respondent avers that your respondent, as Comptroller of the State of Louisiana, in the performance of his ministerial duties is required to honor warrants for the withdrawal of funds from the State Treasury, where specific appropriations have been made for a definite purpose and to a particular agency or official and it is his duty as such to presume constitutionality of any conditions or contingencies which may have been imposed by the Legislature in the use of said appropriated funds.

\* \* \* \* \* \*

"That pursuant to said assumption of constitutionality your respondent unless enjoined by this Honorable Court has and will continue to honor warrants drawn upon the State Treasury, only when approved by the Division of Administration and by the State Budget Committee, all as provided for in Act 75 of 1962, and upon the contingencies set forth in the particular Sections of Title 39 of the Revised Statutes of 1950 which are set forth in particularity in petition filed herein.

\* \* \* \* \* \*

"That your respondent has received numerous directives and proclamations issued to him under authority of the said Sections of Act 75 and the said provisions of Title 39, which have had the effect of prohibiting him from honoring warrants for money to be withdrawn from the State Treasury on appropriations made by said Act 75, or any other appropriation act, which practices respondent will continue to follow unless restrained or enjoined by this Honorable Court, all as shown by properly identified exhibits  *  *  * "

Defendant Theriot also prayed that plaintiff's suit be dismissed.

Defendant James S. Reily filed exceptions of no right or cause of action and want of interest, and, alternatively, exceptions of vagueness and non-joinder of parties defendant to plaintiff's petition.

Defendant Reily alleged that plaintiff sued in his capacity as a citizen and taxpayer, not to enjoin an illegal expenditure of public funds which he had the right to do under the jurisprudence of this State, but to enjoin the enforcement of certain fiscal safeguards provided by statute and administrative rulings in connection therewith. He urged that plaintiff was without sufficient interest to bring the action.

Defendant Reily further contended that plaintiff complained of the activities of the Louisiana Legislative Budget Committee and sought to restrict them, but that he did not make the Committee a party defendant as he should have done.

Jack P. F. Gremillion, Attorney General of the State of Louisiana, and certain of his Assistants, made an appearance in the matter and submitted their views, which we quote in part as follows:

"THAT the Attorney General agrees with plaintiff's contention that those Sections of Act Number 75 of 1962 enumerated in plaintiff's petition are unconstitutional because they constitute contingencies which impinge upon this General Appropriations Act, all of which are manifestly repugnant to Article 4, Sections 9 and 10, of the Louisiana Constitution of 1921 [LSA].

*     *     *     *     *     *

"THAT the Attorney General agrees with plaintiff's contention that those certain Sections of Title 39 enumerated in plaintiff's petition are unconstitutional as an unlawful delegation of legislative authority and function being manifestly repugnant and violative of Sections 1 and 2 of Article 2 of the Louisiana Constitution of 1921, and as well, Article 4, Section 1 of said Constitution."

Said Attorney General and his said Assistants prayed that their response be deemed in full compliance with law and that

plaintiff be granted the relief for which he prayed.

Defendant Reily filed a motion to strike the entire document entitled "Appearance" filed by the Attorney General and his Assistants, averring that said "Appearance" was an insufficient defense to a lawsuit; that the opinions referred to therein were of no judicial significance.

The trial court overruled the exceptions of no right or cause of action, want of interest, non-joinder of parties defendant, and vagueness; the motion to strike was taken under advisement. The rule nisi was then heard upon verified pleadings, supporting affidavits, and the testimony of the immediate parties to the suit.

The judgment of the trial court decreed that Sections 3, 4, 5, 6, 7, 8, 9 and 11 of Act 75 of 1962, the General Appropriations Act of the 1962 Legislature, were unconstitutional; it further decreed that LSA–R.S. 39:42, 52, 53, 54, 55, 56, 57, 95, 96, 97, 231 and 233, were unconstitutional. The pre-

liminary writs of injunction prayed for in plaintiff's petition were granted, to be issued upon plaintiff furnishing bond in the sum of $500.00. All exceptions filed were overruled.

In their appeal to this Court, defendants set forth the following specification of errors:

"1. The trial court erred in overruling the exceptions of WANT OF INTEREST, NO CAUSE OR RIGHT OF ACTION, and NONJOINDER OF PROPER PARTIES DEFENDANT.

"2. The trial court erred in finding as a matter of law that certain sections of Title 39 of the Revised Statutes and certain sections of the General Appropriations Act of 1962 (Act 75) were unconstitutional."

▬ The Legislative Budget Committee was created by Act 368 of 1962;[1] the

---

[1] "Section 1. The Legislative Budget Committee is hereby created. The Committee shall be composed of the Lieutenant Governor, the Speaker of the House of Representatives, eight from the membership of the House of Representatives of the Legislature of Louisiana and five from the membership of the Senate of the Legislature of Louisiana, to be appointed by the Governor for terms concurrent with his own, and the Chairman of the Appropriations Committee of the House of Representatives and the Chairman of the Senate Finance Committee. A vacancy, for any cause, shall be filled for the un-

expired term in the same manner as the original appointment. The Committee shall select a chairman and a vice-chairman and such other officers as the Committee deems necessary. The members of the Committee shall receive the same per diem and travel allowance in the performance of their duties as is provided for members of the Legislature.

"Section 2. It shall be the duty of the Committee to make such study and examination of matters pertaining to the budgeting of state funds and the revenues, expenditures and fiscal affairs of the state as it deems desirable. The Com-

provisions of the Act are included in the Revised Statutes of 1950, as Part X of Chapter 1 of the section treating of Public Finance, Division of Administration, LSA–R.S. 39:311, 312, 313, 314, 315. The Committee, as thus constituted, is not sui juris.[2] Under these circumstances, it was not necessary, therefore, that the Committee be named as a party defendant. The trial court properly overruled the exception of non-joinder of proper parties defendant.

In Stewart v. Stanley, 199 La. 146, 5 So. 2d 531, we held that, "It is the firmly established jurisprudence of this State that a taxpayer may resort to judicial authority to restrain public servants from transcending their lawful powers or violating their legal duty in any unauthorized mode which would increase the burden of taxation or other-wise unjustly affect the taxpayer or his property. The fact that the taxpayer's interest might be small and not susceptible of accurate determination is not sufficient to deprive him of the right. The action is regarded as having a public character and as being a proceeding in which the public complains. * * *" In Carso v. Board of Liquidation, 205 La. 368, 17 So.2d 358, we stated, " * * * it is now settled by several recent decisions of this court that a taxpayer, as such, has a right of action to enjoin a state official or state agency from disposing of public funds under authority of a statute which the taxpayer contends is unconstitutional. * * *" See, Graham v. Jones, 198 La. 507, 3 So.2d 761; Ricks v. Close, 201 La. 242, 9 So.2d 534..

mittee shall work with the Office of the Governor and the Division of Administration in the preparation of the state budget to be presented to the Legislature for its consideration at its regular sessions. It shall make such reports of its findings and recommendations with regard thereto to the Legislature as it shall deem advisable.

"Section 3. The Committee shall have the power and authority to hold hearings, subpoena witnesses, administer oaths, require the production of books and records and to do all other things necessary to accomplish the purposes of this Act, including the power to punish for contempt and to provide for the prosecution in accordance with the laws of this state of any individual who refuses to testify or who is charged with false swearing or perjury before the Committee.

"Section 4. The Committee shall have the authority to employ professional, clerical, and other necessary personnel and to incur other expenses necessary for carrying out the provisions of this Act.

"Section 5. All of the agencies, boards, commissions and departments of the state and of any of its political subdivisions are hereby directed to assist the Committee in its work and to furnish such information, reports, aid, services and assistance as may be requested, all without any cost or charge of any nature to the Committee.

"Section 6. All laws or parts of laws in conflict herewith are hereby repealed."

2. LSA–C.C.P. Art. 3605, reads in part as follows: "An order granting * * * a preliminary * * * injunction * * * shall be effective against the parties restrained * * * and those persons in active concert or participation with them * * *." Also, see prayer of plaintiff's petition, supra.

Schedule 89 of Act 75 of 1962, the General Appropriations Act of the 1962 Legislature, appropriates $60,000.00 for the operation of the Legislative Budget Committee; Schedule 11 of the same Act appropriates $320,046.00 for the operation of the Division of Administration. Both, the Legislative Budget Committee and the Division of Administration, are active participants in the carrying into effect of the provisions of the laws which plaintiff contends are unconstitutional; the funds appropriated, *supra*, would undoubtedly be employed in part for such operations. Under the circumstances herein, plaintiff, a taxpayer who contributes a part of the funds involved—no matter how infinitesimal—has a definite interest he can assert in this cause. The trial judge therefore properly overruled the exceptions of want of interest and no right or cause of action.

We will now consider the constitutionality vel non of the contested sections of Act 75 of 1962 and the Revised Statutes.

The sections of Act 75 of 1962 herein involved provide:

"Section 3. The appropriations made in this Act shall be payable out of the sources specified, but only on condition that there shall be deposited in the state funds from which the appropriations are made to the account of said funds all unencumbered balances of cash on hand on June 30, 1962 with-

in one hundred twenty days after the close of the fiscal year; provided, that the unencumbered balances of appropriations made under this Act which remain as of June 30, 1963 shall be deposited in the fund from which the appropriation is made to the account of said fund within one hundred twenty days after the close of the fiscal year 1962–1963, and all receipts directly collected in the fiscal year July 1, 1962 through June 30, 1963 except receipts of state colleges and trade schools under the supervision of the Louisiana State Board of Education as hereinafter provided, to the extent said unencumbered balances and receipts are subject to appropriation. Nothing in the foregoing provisions shall in any way require the deposit in the fund from which said appropriations are made of any legal reserves or other sums required by law to be maintained or provided by the departments and agencies. The transfer of said balances and receipts required by the provisions of this Section is herein expressly authorized and directed by the Legislature."

"Section 4. All agencies operating partly on dedicated funds and partly from an appropriation made herein from the State General Fund shall remit to the State General Fund any surplus available at the close of each

fiscal year after applying all dedicated receipts; however, the maximum of such remittances to the State General Fund shall not exceed the total amount withdrawn from the State General Fund during the fiscal year."

"Section 5. The expenditures of the departments and agencies for which appropriations are made herein and the incurring of obligations to spend money shall conform to allotments as are established by the Governor's Budget Study Committee, or its Successor, and approved by the Commissioner of Administration and the Commissioner of Administration shall establish and approve such allotments only after approval of the Governor's Budget Study Committee, or its successor. To the extent that the efficient operation of the various units will not be impaired, the amounts to be expended by each unit shall conform strictly to the category of expenditures as specified in the allotments approved by the Commissioner of Administration; however, the Commissioner of Administration with the advice and consent of the Governor's Budget Study Committee or its successor, is authorized to approve the transfer of funds from one category of expenditure to another, but they shall approve such transfers only when, in their opinion, sufficient evidence is presented to them that the operations of

the unit are being or will be impaired without such transfers."

"Section 6. The appropriations herein contained shall become available to the budget units each month to the extent of one-third of quarterly allotments made on the basis of the total annual allotments approved by the Commissioner of Administration and concurred in by the Governor's Budget Study Committee, or its successor. The Commissioner of Administration with the consent provided in Section 5 may authorize the State Comptroller to approve and authorize the State Treasurer to pay a budget unit an amount greater than one-third of the quarterly allotment in any one month, if the best interest of the State will be served thereby."

"Section 7. All money paid into the State Treasury from Federal subventions and grants and all bequests or earnings from trust funds shall be deemed to be available for expenditure beyond sums herein appropriated, without specific appropriations or other authorization thereof insofar as the acceptance of such subventions, grants, bequests and trust funds is authorized by law; provided, however, that before any of such subventions, grants, bequests, or earnings from trust funds shall be deemed available for allotment

and expenditure, agencies whose operations will be effected by such subventions, grants, bequests or earnings from trust funds shall submit to the Division of Administration a listing showing their source and the purpose or purposes for which such funds are to be used."

"Section 8. If any of the functions of the departments and agencies herein appropriated for are transferred to a different department or agency, or departments or agencies, the appropriations herein made shall follow the function or activity so transferred. In such case the Commissioner of Administration with the consent provided in Section 5 shall ascertain the amounts of such appropriations to be transferred and shall notify the Treasurer and Comptroller of such transfers, and such notification shall be deemed full authority for transfers to be made by the Treasurer and Comptroller."

"Section 9. No expenditure shall be made pursuant to this Act except in accordance with allotments made by the Commissioner of Administration. The expenditures of the departments and agencies for which appropriations are made herein and incurring of obligations to spend money shall conform with such allotments as are established by the Commissioner of Administration and the consent provided in Section 5

in conformity with the law and the provisions of this Act; provided, however, that no special appropriation made at this session of the Legislature shall have preference and priority over any of the items in this general appropriation bill."

"Section 11. If, at any time during a fiscal year, the governor finds that the receipts of the treasury are falling short of the estimates for the then current quarter and that, by reason of other unforeseen conditions, a cash deficit is likely to be incurred under the expenditure pursuant to allotments then in force, he shall review the estimates and he shall examine in detail the purposed expenditures under the allotments in force, and he shall recommend to the agency a revision of the allotments in force to the extent that they are not already committed, under contracts or otherwise, as he may see fit to bring the expenditures within the amount of the estimated available cash resources of the period."

The sections of the Revised Statutes herein involved provide:

LSA–R.S. 39:42. "Adoption of financial plan

"The financial plan presented in the executive budget shall be adopted with such amendments as may be determined by the legislature. The legislature

shall pass such appropriation and revenue acts and such other acts, as the legislature may deem necessary to make the financial plan effective.

"The financial plan so adopted by the legislature shall be evidenced by the state budget for the year, prepared in accordance with the provisions of this Chapter. The several amounts appropriated shall be made available in quarterly allotments made by the budget office to the budget units for expenditure."

LSA–R.S. 39:52. "Quarterly allotments from appropriations

"Appropriations shall be made available to the budget units in allotments by quarters for each fiscal year, these allotments shall be made on the basis of work programs and requests for allotments prepared by the heads of the several budget units, and no allotments shall be made available to them until the work programs and requests have been approved by the commissioner. The commissioner shall promptly notify the head of the budget unit concerned regarding each allotment and each proposed revision or modification thereof made under the provisions of this Chapter, to the end that harmonious adjustments may be made where necessary."

LSA–R.S. 39:53. "Work programs and requests for allotments

"Not later than the first day of each quarter, the head of each budget unit and spending agency of the state shall present to the budget office on the forms and in the manner prescribed, requests for allotments as provided in this Section.

"The requests for allotments shall conform to the state budget, except as deviations therefrom are made necessary by changes in conditions of operation, to meet unforeseen circumstances, or to correct errors."

LSA–R.S. 39:54. "Quarterly review of budget estimates and authorizations of allotments

"The budget office shall, prior to the first day of each quarter of the fiscal year:

"(1) Review the progress of the collection of revenues, consider the condition of the treasury, forecast the receipts of the treasury for the next ensuing quarter, and estimate the total cash resources of the period that will be available for expenditures.

"(2) Estimate the probable cash requirements for expenditures to be made in the period, by categories as follows:

"(a) For interest on, and retirement of, funded and floating debt maturing payable during the period.

"(b) For meeting the obligations to accrue under contracts already made for capital outlay projects and for providing for such additional extraordinary expenses and capital outlays as are necessary to inaugurate or continue projects that are deemed to be especially urgent. The unexpended balances of commitments under contracts for the then current quarter shall be added to the allotments for the next ensuing quarter.

"(c) For ordinary recurring expenses for which allotments have previously been made and additions to the allotments proposed by the budget units.

"(d) For further extraordinary expenses and capital outlays not covered by the second preceding category.

"(3) Confirm or revise any allotments previously made and make any additional allotments for the next ensuing quarter under each of the categories listed under the next preceding sub-section. The allotments of each category shall be dealt with separately, in succession. In the case of each category after the first, the action shall be based upon consideration of the estimated cash resources available after allowing for the allotments already confirmed, revised or made under the preceding category or all the preceding categories, with a view to promotion of economical spending and to keeping the total of all the allotments for the quarter within the amount of the available cash resources of the quarter, and avoiding incurrence of a cash deficit.

"(4) Make allotments, or confirm or revise allotments previously made, for ordinary recurring expenses for each succeeding quarter of the fiscal year, and for each extraordinary expense and capital outlay or project for each succeeding quarter year until the purpose or project is completed, or the equipment or other property has been acquired."

LSA–R.S. 39:55. "Revisions of allotments during a quarter to prevent a deficit

"If, at any time during a fiscal year, the governor finds that the receipts of the treasury are falling short of the estimates for the then current quarter and that, by reason of other unforeseen conditions, a cash deficit is likely to be incurred under the expenditure pursuant to allotments then in force, he shall review the estimates and he shall examine in detail the proposed expenditures under the allotments in force, and he shall recommend to the agency a revision of the allotments in force

to the extent that they are not already committed, under contracts or otherwise in accordance with this Chapter, as he may see fit to bring the expenditures within the amount of the estimated available cash resources of the period."

LSA–R.S. 39:56. "Authorization of capital outlays

"No work shall be commenced and no contract shall be entered into for the improvement of lands or the construction, alteration, or reconstruction of any building or other structure, involving an expenditure from the state treasury under any appropriation, notwithstanding any allotment therefor, except for the expenditure of funds dedicated in the constitution to the construction and maintenance of the highway system of the state, until plans and specifications, estimates of cost, and the bids received, covering the entire work contemplated, and the proposed contract, or the undertaking of the work, has been approved and authorized by the governor. The governor shall not so approve nor authorize any contract, nor the undertaking of the work, in any case in which he finds, from the plans, specifications, estimates, and the bids therefor, or otherwise;

"(1) that the cost of the complete work contemplated will exceed the amount of appropriation therefor, or

"(2) that the work contemplated will be insufficient for the purpose for which such appropriations were made, or

"(3) that after providing for debt service and for the ordinary recurring expenses and capital outlays, cash will not be available in the treasury to pay promptly for the work."

LSA–R.S. 39:57. "Allotments to govern expenditures; transfers of allotments

"The head of the budget unit shall hold all expenditures to the quarterly allotment. In no case shall obligations be incurred or expenditures made in excess of the total amount allotted.

"Transfers of allotments from one category to another shall be made only upon approval of the governor or the commissioner of administration."

LSA–R.S. 39:95. "Commitments in excess of allotments not to be approved

"In no event shall the head of any budget unit, either by himself or through any assistant designated by him, approve any commitment voucher involving an expenditure of any sum in excess of the unencumbered balance of the allotment to which the resulting expenditure would be charged, without prior approval of the governor."

LSA–R.S. 39:96. "Governor may grant special authority in certain cases

"The governor may grant special authority, during any fiscal year, for making specific purchases of supplies or materials to be used in the next ensuing fiscal year for any budget unit, or he may authorize contracts in anticipation of appropriations already made, or to be made for the next ensuing fiscal year for any purposes authorized by an existing law; but not for any amount exceeding that necessary to meet the requirements for supplies and expenses other than capital outlay projects for the first three months of the next fiscal year; provided that this restriction shall not apply to contracts for capital outlay projects for which appropriations have been provided for obligations to be incurred in two or more fiscal years. Where it is necessary to place orders for supplies, materials and equipment for a period beyond three months, in order to be assured of deliveries to meet the needs of state agencies and to obtain favorable prices, due to seasonal supply and demand as established by the usages of the particular trades, the specific cases shall be submitted to the governor for approval, and upon such approval purchases may be made for requirements beyond the three months. Payments made at the close of a fiscal year under such authority shall be treated as deferred charges to the appropriations and expenses of the next ensuing fiscal year until the beginning of the year."

LSA–R.S. 39:97. "Conditions under which public money may be withdrawn from the treasury

"A. No money of the state or for which the state is responsible shall be withdrawn from the treasury or otherwise disbursed for any purpose except to pay obligations under expenditures authorized either by appropriation, dedication of revenues or other lawful authority and pursuant to allotment as in this Chapter provided and not in excess of the amount so authorized;

"B. Each such expenditure shall have been authorized by the head of the unit by or for which the expenditure was made.

"C. The provisions of this Section shall not be construed to apply to withdrawals of funds from any state depository bank for immediate redeposit in any other state depository bank for investment as provided by law, for refund of taxes paid in error, deposits made by vendor and similar disbursements, or reimbursements of expenses representing restoration of the fund; nor shall the provisions apply to insurance recoveries where the insurance recovery is used for replacement of the property destroyed."

LSA–R.S. 39:231. "Commissioner to prescribe rules governing traveling expenses

"The commissioner, with the approval of the governor, shall prescribe rules defining the conditions under which each of various forms of transportation may be used by state officers and employees and used by them in the discharge of the duties of their respective offices and positions in the state service and he shall define the conditions under which allowances will be granted for all other classes of traveling expenses and the maximum amount allowable for expenses of each class."

LSA–R.S. 39:233. "Petty cash

"Any budget unit may be granted petty cash, when provided for by appropriation and allotment, for the purpose of making disbursements requiring prompt cash outlay, but not in any case to exceed twenty-five hundred dollars. The custodian of the petty cash, as often as may be necessary to replenish the petty cash and at least once each month, shall prepare a schedule of the disbursements therefrom accompanied by appropriate vouchers and statements of indebtedness therefor,

and by certificate as to the condition of the petty cash. Payment in reimbursement of the petty cash shall be in the form and manner prescribed for other payments under this Chapter in the amount of the total of the approved vouchers. The payment shall be made to the custodian of the petty cash and shall be devoted to reimbursement thereof. Any question relative to the amount to be allowed in petty cash, the expenditures thereof, the accounting therefor, and payment thereof, shall be determined by the commissioner of administration. Petty cash advanced from any fund shall be carried on the general books of the state as an asset of the fund."

The trial judge sustained plaintiff's attack on the above quoted sections of Act 75 of 1962 and of Title 39 of the Revised Statutes and held:

"1. The sections of Act 75 of 1962 violate Article IV, Section 9, Louisiana Constitution of 1921, in that they incorporate into the General Appropriations Act of 1962 matters other than appropriations.[3]

"2. The contested sections of both the Act and the Revised Statutes re-

---

3. Art. IV, Sec. 9, La.Const. of 1921, provides: "The general appropriation bill shall embrace nothing but appropriations for the ordinary expenses of the government, pensions, the public debt and in- terest thereon, public schools, public roads, public charities and all State institutions; and such bill shall be so itemized as to show for what account each and every appropriation shall be made.

strict the constitutional functions of State officers.

"3. The contested sections of the Act and the Revised Statutes delegate legislative powers to the Commissioner of Administration and to the Legislative Budget Committee in violation of the Louisiana Constitution of 1921.[4]

All other appropriations shall be made by separate bills, each embracing but one object."

Appellee avers in brief: "The creation of a system of monthly allotments and expenditures subject to the approval of the Legislative Budget Committee and the Commissioner of Administration is not a proper subject for incorporation in the General Appropriations Act. Under Article 4, Section 9, it is a matter which should have been the subject of a separate act, and it is, therefore, unconstitutional."

4. "The powers of the government of the State of Louisiana shall be divided into three distinct departments—legislative, executive, and judicial." Art. II, Sec. 1, La.Const. of 1921.

"No one of these departments, nor any person or collection of persons holding office in one of them, shall exercise power properly belonging to either of the others, except in the instances hereinafter expressly directed or permitted." Art. II, Sec. 2, La.Const. of 1921.

"The legislative power of the State shall be vested in a Legislature, which shall consist of a Senate and a House of Representatives." Art. III, Sec. 1, La.Const. of 1921.

"All bills for raising revenue or appropriating money shall originate in the House of Representatives, but the Senate may propose or concur in amendments, as in other bills." Art. III, Sec. 22, La. Const. of 1921.

"No money shall be drawn from the treasury except in pursuance of specific appropriation made by law; nor shall any appropriation of money be made for a longer term than two years. A regular statement and account of receipts and expenditures of all public moneys shall be published every three months, in such manner as shall be prescribed by law." Art. IV, Sec. 1, La.Const. of 1921.

Article V, Section 20, provides that the Legislature shall make appropriations for the clerical and other expenses of the offices of the Auditor, the Treasurer, the Secretary of State, the Register of the Land Office, the Commissioner of Agriculture and Immigration, the Commissioner of Conservation, and the Insurance Department.

In appellee's brief, it is argued: "In the case at bar, the legislation under attack constitutes a complete surrender by the Legislature to the Commissioner of Administration and the Legislative Budget Committee of the control of the Legislature over the matter of appropriating the State's revenue to the several purposes permitted in the Constitution. Sections 1 and 2 of Act 75 of 1962 appropriate specific sums to specified state agencies, but the remaining sections of the act and the contested sections of Title 39 provide that these agencies may not obtain their appropriations without first obtaining from the Commissioner of Administration and the Budget Committee their approval of the use to which the appropriation is to be put. Under the legislation attacked herein, the Legislature has determined only a 'ceiling' or maximum amount for a state agency's appropriation; subsequently the Commissioner of Administration and the Budget Committee determine the use to which the appropriation may be put by the agency and in the event that the Commissioner or the Committee disapproves certain of the agency's proposed expenditures and places them in the 'unallotted category,' such action results in a reduction of the agency's appropriation. * * * "

"4. The contested sections of the Act and of the Revised Statutes have the effect of making appropriations contingent in violation of Article IV, Section 10, Louisiana Constitution of 1921."

◼ A close reading of the sections of Act 75 of 1962 herein involved convinces us that they do not contain matter foreign to appropriations. The purpose of Section 9 of Article IV of the Constitution is to prevent the incumbering of the general appropriation bill with all kinds of appropriations, thus simplifying it, and thereby reducing the chances of making ill-considered appropriations in the confusion that might otherwise arise, and preventing the retarding of the bill by protracted discussions over matters that more properly should be separately considered. Borden v. Louisiana State Board of Education, 168 La. 1005, 123 So. 655, 67 A.L.R. 1183. Sections 1 and 2 of Act 75 of 1962 set forth the dollar amounts of appropriations; they contain approximately ninety schedules. The sections following, herein attacked, refer to and treat of the appropriations made in Sections 1 and 2; they provide for the allotment to the designated departments of the appropriations set forth. They are germane to the appropriations made and embrace no matter prohibited by Article

IV, Section 9, of the Louisiana Constitution of 1921.

"In deciding whether a statute of the Legislature violates a constitutional provision which prohibits an act from embracing more than one object, courts must keep in mind its main purpose as disclosed by its language. It matters not how comprehensive the act may be or how numerous its provisions; it does not violate such a constitutional prohibition if its language, reasonably construed, shows that it has but one main, general object or purpose, and if nothing is written into it except what is naturally connected with, and is incidental or germane to, the one purpose or object." Wall v. Close, 203 La. 345, 14 So.2d 19, 26. See, State v. Guidry, 142 La. 422, 76 So. 843. .

Before a determination can be made as to whether the provisions of Act 75 of 1962 and the Revised Statutes herein involved contain an unlawful delegation of legislative power, it is necessary that we place in proper perspective the method by which the General Appropriations Act for each year is adopted and the events which take place thereafter with respect to expenditures and withdrawals of appropriations made in the Act.

A study of the laws relating to the public fisc, defendants' brief, and the testimony of

James S. Reily, Commissioner of Administration,[5] reflect the following system:

"1. The various budget units of the State submit their requests for money for the ensuing fiscal year to the Legislative Budget Committee prior to the meeting of the Legislature.

"2. The Legislative Budget Committee and the Division of Administration study the many requests for money, the probable revenues which will be available for expenditure during the year and make recommendations to the Governor.

"3. The Governor then submits a budget message to the Legislature in which he outlines the money expected to be available during the year and the amount he believes each agency should receive.

"4. The Legislature then considers this recommendation and after making such adjustments as it considers necessary enacts not a budget, but a General Appropriations Act appropriating specified amounts to the various state agencies.

"5. After the General Appropriations Act becomes law, taking into consideration any items which might have been vetoed according to law, the various agencies know for the first time the amount of money which will be available to them for expenditure during the ensuing year.

"6. The various budget agencies then prepare a budget showing how they propose to spend the money and submit that budget to the Division of Administration and the Legislative Budget Committee for approval.

"7. Once the budget is approved, the moneys are made available pursuant to allotment.

"Allotments are made available quarterly on the basis of work programs and requests for allotments prepared by the heads of the budget units. LSA–R.S. 39:52. The quarterly allotment

5. "The commissioner of administration shall, under supervision of the governor, direct the activities of the division of administration and such other subdivisions thereof as are created by the governor. The commissioner shall be appointed by and shall serve at the pleasure of the governor. * * *" LSA–R.S. 39:5.

"The commissioner of administration shall render all required staff services in connection with the functions of his office and shall advise and assist the governor and the committees of the legislature in their consideration of budget matters." LSA–R.S. 39:6.

The commissioner furnishes bond in the sum of $50,000.00 conditioned upon the faithful performance of his duties.

is paid in thirds. Sec. 6, Act 75 of 1962. Throughout Act 75 of 1962 and the statutes herein involved there are provisions providing for emergencies and extra needs of budget agencies.

"If an allotment is not approved by the Legislative Budget Committee and the Commissioner of Administration during any fiscal quarter, funds can be transferred to an unallotted fund. The budget agency is permitted to later request a withdrawal from the unallotted fund.

"The State Comptroller approves the warrants drawn for the allotments; they are paid by the State Treasurer.

"8. If any budget agency feels aggrieved by a disapproval of its quarterly allotment request, it is granted an appeal.

"There is hereby established a budget appeals commission, consisting of the Governor, the chairman of the appropriations committee of the house of representatives, the chairman of the finance committee of the senate, the speaker of the house of representatives and the Lieutenant Governor. The members of the commission shall serve without compensation except those who are members of the legislature who shall receive twenty dollars per diem and travel expenses while attending

meetings of the commission." LSA-R.S. 39:291.

"The budget appeals commission shall, when requested by the Governor, actively assist him in the preparation of the executive budget for submission to the legislature as required by law, and for this purpose, it shall meet in the state capitol at such times as the Governor or Governor-elect may direct. The commission shall also meet on call to act on any budget appeals as may be filed by the various budget units as provided in R.S. 39:293." LSA-R.S. 39:292.

"A right of appeal to the budget appeals commission is hereby granted to any budget unit, as defined in R.S. 39:2, in any case in which it feels aggrieved by the action of the Governor or of the budget office in approving or disapproving the quarterly budgets submitted by them for the operation of their respective units. The head of the budget unit concerned shall file with the Governor a written request for a hearing before the commission, and the Governor shall, within five days thereafter, set a date for the hearing and notify the members of the commission, who shall meet on the date specified. The decision of the commission in any such matters of appeal shall be binding on all parties, subject to all rights of action and

judicial review provided by law." LSA–R.S. 39:293.

"Subject to the rights of judicial review as provided in R.S. 39:293, if the commission, by a majority vote, holds in favor of the unit presenting the appeal, then the commission shall order the unit to amend its budget to conform to the findings of the commission. This amended budget shall then be transmitted, with the written approval of the commission, to the State Auditor [now Comptroller] who shall be governed thereby in the drawing of warrants for the expenditure of money as provided by law. If the commission does not concur in the appeal, it shall transmit written notice of its action to the State Auditor who shall then be governed thereby in the drawing of warrants for the expenditure of money as provided by law." LSA–R.S. 39:-294

■ The Legislature has absolute control over the finances of the State except as limited by constitutional provisions. Wall v. Close, 203 La. 345, 14 So.2d 19; Art. III, Sec. 22, La.Const. of 1921, supra.

"That the appropriating of the State's funds is a legislative function is fundamental. It is so recognized in the jurisprudence of all of the States and by all of the law writers on the subject." Carso v. Board of Liquidation of State Debt, 205 La. 368, 17 So.2d 358, 363.

"Under our system of government providing for a distribution of powers between the legislative, executive and judicial departments, it is of vital importance that no one department unduly interfere with or hinder any other department while the latter is acting or assuming to act within the scope of the particular powers reserved to it." Durrett Hardware & Furniture Co. v. City of Monroe, 199 La. 329, 5 So.2d 911, 140 A.L.R. 433.

■ The Legislature, however, may delegate to the administrative boards and agencies of the state the power and authority of ascertaining and determining the facts upon which the laws are to be applied and enforced. State v. Guidry, 142 La. 422, 76 So. 843. The modern tendency of the law is to be more liberal in permitting legislative grants of discretion to administrative bodies or officers in order to facilitate administration of laws as complexity of economic and governmental conditions increases. National Bank of Commerce in New Orleans v. Board of Sup'rs, etc., 206 La. 913, 20 So.2d 264. Cf. State v. Morgan, 238 La. 829, 116 So.2d 682; Patorno v. Department of Public Safety, etc., 226 La. 471, 76 So.2d 534; Feinblum v. Louisiana State Board of Optometry Examiners, La. App., 97 So.2d 657.

Nowhere in the contested sections of Act 75 of 1962 or the Revised Statutes do we find that the right to appropriate funds is granted to either the Legislative Budget Committee or the Commissioner of Administration; we do not find any surrender of the Legislature's right to appropriate funds or control the finances of the State. Appellants aptly state in brief, p. 24, "Neither the Commissioner of Administration, nor the Budget Officer, nor the Legislative Committee appropriates money to any agency; none of them can increase or decrease the amount of money so appropriated to any agency; they may only examine the budget and quarterly allotments to see that the expenditures conform to the requirements established by the Legislature in the Appropriations Act and the Revised Statutes." We find that the contested sections contain an orderly system of controls and accounting with relation to the monies appropriated by the Legislature with aids rather than restraints to constitutional officers. The right of appeal, supra, is granted to safeguard any excess use or abuse of authority which might occur. We conclude that there has been no unlawful delegation of legislative authority nor restriction of the functions of constitutional officers.

We have no right to review the policy or wisdom of legislation, because our jurisdiction is confined to determining the applicability, legality or constitutionality of laws (Mouledoux v. Maestri, 197 La. 525, 2 So.2d 11), but we cannot help but remark that we agree with the following excerpt from appellants brief on Page 24:—"The need for such orderly expenditure and some system of control is obvious. In the first place, the more than 497 million dollars appropriated by Act 75 of 1962 is not immediately available for expenditure and comes into the treasury on a most irregular basis with no guarantee that revenues will equal the amount appropriated. * * * it is imperative that the expenditures be made according to a plan which insures that such programs will be properly financed through the entire period covered by the appropriation. These controls are not new and radical." Cf. Wall v. Close, supra.

We now pass to a determination of the correctness of the finding of the trial judge that the contested sections of the Act and of the Revised Statutes are in violation of Article IV, Section 10, of the Louisiana Constitution of 1921, and have the effect of making appropriations to the various budget agencies contingent.

Article IV, Section 10, of the Louisiana Constitution of 1921, recites:

"Each appropriation shall be for a specific purpose, and for a specific amount, and no appropriation shall be made under the head or title of contingent; nor shall any officer or department of government receive any

amount from the treasury for contingencies or for a contingent fund."

Initially, it is pertinent to state that an examination of Act 75 of 1962 reveals that it contains no appropriation under the head or title of "contingent."[6] There are no provisions in the Act that any officer or department of government shall receive any amount from the treasury for contingencies or for a contingent fund. Sections 1 and 2 of Act 75 of 1962 set forth the dollar amounts of appropriations to the various budget agencies; the contested sections themselves make no allocations or appropriations; their object and purpose has been set forth supra.

We do not agree with appellee's argument that the appropriations to the various budget agencies are subject to the occurrence of an uncertain event, namely, the approval of the Commissioner of Administration and the Legislative Budget Committee; we find no merit in his contention that an agency's receiving its full appropriation is dependent upon the will of the Commissioner of Administration and the Legislative Budget Committee. As stated supra, the controversial sections provide a system of controls and accounting with relation to the moneys appropriated by the Legislature. The Commissioner of Administration and the Legislative Budget Committee can neither increase nor decrease the amount of money appropriated for the year to any particular agency; they allocate appropriations quarterly and approve the items for which the funds are spent. If any budget agency feels aggrieved by the action of the Legislative Budget Committee and the Commissioner of Administration, the remedy to secure the alleged necessary relief in such a case is to utilize the appellate procedures set forth in LSA–R.S. 39:291–39:294, supra. If the alleged necessary relief is not granted by the Budget Appeals Commission, the aggrieved budget agency may then resort to the courts.

---

6. In 17 C.J.S. Contingent, p. 182, we find the following: "CONTINGENT. Dependent for effect on something that may or may not occur, on a foreseen possibility, or on that which is undetermined or unknown; not existing or occurring through necessity; possible or liable, but not certain, to occur; also falling or coming by chance, without design or expectation. It has been said that the word implies futurity and possibility, expresses the quality of being casual, and includes all anticipated future events which are not certain to occur, possibilities which prudent men know may happen, although there may not necessarily be known indications of it apparent; and may be employed as presaging the existence of a tentative liability which will become absolute on the happening of a certain event. 'Contingent' has been held synonymous with 'provisional,' and has been contrasted with, or distinguished from, 'absolute' see Absolute 1 C.J.S. p. 374 note 52, 'certain,' 'incidental,' 'indirectly,' 'known,' and 'permanent.'" See, Chandler & Chandler v. City of Shreveport, La.App., 162 So. 437.

The question of the possibility, as posed in argument and in brief, that there may be funds belonging to a budget agency, the expenditure of which has not been approved during the fiscal year by the Legislative Budget Committee and the Commissioner of Administration, in the unallotted funds at the end of the fiscal year is presently hypothetical. It cannot be presumed that state officials would exercise authority vested in them by the Legislature in an unconstitutional manner so as to deprive a budget agency of the dollar amount appropriated to it for the fiscal year by the Legislature. Sweet v. Brown, La.App., 125 So.2d 261; Superior Oil Company v. Reily, 234 La. 621, 100 So.2d 888; Blaize v. Hayes, 204 La. 263, 15 So.2d 217.

In view of the foregoing, we conclude that Sections 3, 4, 5, 6, 7, 8, 9, and 11 of Act 75 of 1962, the General Appropriations Act, and LSA–R.S. 39:42, 52, 53, 54, 55, 56, 57, 95, 96, 97, 231, and 233, are constitutional and not violative of the provisions of the Constitution of 1921, supra. Together they form a general method of fiscal administration followed by this State since the adoption of Act III of 1942, more than twenty years, and represent a conscientious effort on the part of Legislatures under different Governors to assure an orderly expenditure of the millions of dollars required to run our system of government.

Strained or doubtful deductions should not be made to serve for overturning

the deliberate work of the Legislature regarding governmental concerns, such as are more safely left to the enlightened judgment of the Legislature. State ex rel. LaBauve v. Michel, 121 La. 374, 381, 46 So. 430, 432.

For the reasons assigned, it is now ordered that the judgment of the trial court ordering preliminary injunctions to issue herein be reversed and set aside; that the rule nisi issued be recalled and discharged, and that the preliminary injunctions prayed for be denied. Costs of this appeal are to be borne by plaintiff; all other costs are to await the final determination of this cause.

FOURNET, C. J., concurs.

HAMITER, J., concurs in result.

McCALEB, Justice (concurring).

I am in agreement with the majority opinion that the assailed sections of Act 75 of 1962 and Title 39 of the Revised Statutes are constitutional.

However, I also believe that the exception of want of interest is well founded. Plaintiff-taxpayer does not here seek to enjoin the illegal expenditure of public monies, as was the case in Graham v. Jones, 198 La. 507, 3 So.2d 761; Stewart v. Stanley, 199 La. 146, 5 So.2d 531 and Ricks v. Close, 201 La. 242, 9 So.2d 534. His basic complaint is that the manner in which

the statutes claimed to be unconstitutional are being administered is preventing various Departments of the State from getting all the money appropriated to them by the Legislature. He cannot champion the grievance of these Departments; they have an adequate remedy under the law. Taxpayer actions, in my view, should be circumscribed to those cases in which the act sought to be enjoined is the assessment of an illegal tax or the unlawful expenditure of funds under the authority of a palpably unconstitutional statute.

I therefore respectfully concur in the result.

SUMMERS, Justice (dissenting).

The attack upon the contested sections of Act 75 of 1962 and of Title 39 of the Revised Statutes has for its basis, among other, the charge that these legislative pronouncements contravene the fundamental law of this State in that they constitute a delegation of legislative power to the Commissioner of Administration and to the Legislative Budget Committee. The validity of this attack, then, leads me to inquire into who and what these alleged delegates might be.

The Commissioner of Administration is appointed by and serves at the pleasure of the Governor, and his activities are directed and supervised by the Governor. LSA-R.S. 39:5 so declares.

The Legislative Budget Committee is composed of fifteen members, thirteen of whom are appointed by the Governor. Act No. 368 of 1962 so declares.

Unmistakably the Commissioner of Administration and the Legislative Budget Committee deriving their offices from the Governor are by reason thereof in theory and, in fact, merely arms of the executive branch of the government.

It is the very essence of constitutional government that the legislative, executive and judicial branches should be distinct and separate. Thereby the checks and balances so essential to the preservation of democratic government has its source. Our constitution makes this unmistakably clear for by Article II, Section 1, it declares: "The powers of the government of the State of Louisiana shall be divided into three distinct departments—legislative, executive, and judicial." It is further provided by Article II, Section 2, thereof that "No one of these departments, nor any person or collection of persons holding office in one of them, shall exercise power properly belonging to either of the others, * * *." The legislative power, of course, is vested in the legislature consisting of the senate and house of representatives. (La.Const. art. III, § 1). All bills for raising revenue or appropriating money originate in the house of representatives. (La.Const. art. III, § 22). And no money shall be drawn

from the treasury except in pursuance of specific appropriations made by law. (La.Const. art. IV, § 1). And each appropriation shall be for a specific purpose and for a specific amount and no appropriation shall be made under the head or title of contingent.

I understand from these constitutional enactments, our paramount law, that the appropriation of public funds is exclusively a function of the legislature; and that authority and responsibility having been constitutionally imposed, cannot be delegated to any other body or authority. Tichenor Antiseptic Co. v. Schwegmann Bros. Giant Super Markets, 231 La. 51, 90 So.2d 343 (1956); City of Alexandria v. Alexandria Fire Fighters Ass'n, 220 La. 754, 57 So.2d 673 (1952); Carso v. Board of Liquidation, 205 La. 368, 17 So.2d 358 (1944); State v. Watkins, 176 La. 837, 147 So. 8 (1933); Carter v. State, 42 La.Ann. 927, 8 So. 836 (1890).

I consider the foregoing propositions to be indisputable and their wisdom conceded by all who cherish liberty.

It is contended that by the contested legislation, particularly LSA–R.S. 39:52 and Sections 5, 6, and 9 of Act 75 of 1962, the Commissioner of Administration and the Legislative Budget Committee are in effect exercising functions of a purely legislative character when they are empowered to dispose and appropriate the funds of the State to the payment of particular debts of the State. This is accomplished, it is said, by their authority to approve or to disapprove the work programs and expenditures of the various budget units. The approval which is referred to results from their "allotting" funds for the work programs of the budget units and the disapproval is manifested when they place certain items of expenditure already approved by the legislature in the "unallotted" category, thereby reducing the appropriation which the legislature has previously approved for the affected budget unit. Until the funds placed in the unallotted category are released therefrom they are unavailable for expenditure by a budget unit; and if they remain unallotted at the end of the fiscal year, these funds remain in the State's general fund.

It is self-evident from a reading of the contested legislation that the approval of the Commissioner and Budget Committee is a prerequisite for the payment to any budget unit of any money appropriated to it by the legislature. Can it be denied that all appropriations in Act 75 of 1962 are in fact no appropriations at all; for is it not required that before those funds thus approved can be expended the approval of the Commissioner and Budget Committee must be obtained? If this be so, has the legislature not relinquished its responsibility to others whom we have seen are primarily appointees of the Governor? Does it not

follow that a delegation of legislative authority to the executive has in fact taken place?

The proponents of the validity of the legislation in question assert that the Commissioner and the Budget Committee cannot increase or decrease the amount of money so appropriated by the legislature to any agency, conceding that if they possessed this power, it would be an unlawful delegation of legislative functions.

To illustrate the error of the contention of the proponents, it is only necessary to set forth that by Section 9 of Act 75 of 1962 it is declared that "No expenditure shall be made pursuant to this Act except in accordance with allotments made by the Commissioner of Administration." By LSA–R.S. 39:52 it is seen that "[a]ppropriations shall be made available to the budget units in allotments * * * and no allotment shall be made available to them until the * * * requests have been approved by the commissioner."

What I perceive to be the plan of this legislation is what I consider to be reprehensible and unconstitutional. Although an agency of the government, the schools for example, may submit to the legislature a request for an appropriation and justify this request prior to the appropriation, and though the appropriation becomes a legislative enactment, there is no assurance that their problem ends there. They have still to confront the Commissioner and the Budget Committee after the legislation has become law and that Commissioner and Budget Committee under the contested legislation has the sole and unrestrained authority to approve or disapprove "as he sees fit" or if "in their opinion" approval or disapproval is indicated.[1]

Such a result is repugnant to the manifest tenor of Article IV, Section 1, of the constitution; for that provision does not require the approval of the Commissioner or Budget Committee for money to be withdrawn from the State Treasury. It requires an appro-

1. The rule of law is well-known that any statute purporting to vest arbitrary discretion in a public officer without prescribing definite rules or specific conditions for his guidance is unconstitutional because it is in effect a surrender of legislative power to make law. Other legislation has been declared unconstitutional on this basis by this court. Banjavich v. Louisiana Licensing Board for Marine Divers, 237 La. 467, 111 So.2d 505 (1959); State v. Morrow, 231 La. 572, 92 So.2d 70 (1956); City of Baton Rouge v. Shilg, 198 La. 994, 5 So.2d 312 (1941); City of Shreveport v. Herndon, 159 La. 113, 105 So. 244 (1925). See also 42 Am.Jur. Public Administrative Law, Sec. 44.

The legislation under attack is not a complete expression of legislative will, but attempts to clothe an administrative officer with unrestricted discretion to make fundamental decisions on what is best for the public welfare without setting any uniform requirements for his guidance, and for that reason is violative of Article II of the Louisiana Constitution. See 42 Am.Jur. Public and Administrative Law, Sec. 43; 16 C.J.S. Constitutional Law.§§ 133, 138.

priation by an act of the legislature for such withdrawal, and nothing further. The clear intendment of that constitutional provision is that the people have entrusted to the legislature the obligation of determining the wisdom of all expenditures and not to an administrative agency or an arm of the executive branch.

The only restraint which the contested legislation imposes upon the Commissioner and Budget Committee is that they cannot approve the expenditure of funds in excess of those authorized by the "so called" appropriation bill; there is no guide post, however, nor is there any limitation upon the reductions which may take place in the appropriation ostensibly made. In other words, except to place the limit upon the maximum funds a budget unit may expend, the legislature has delegated to the Commissioner and Budget Committee the authority to determine whether any budget unit will be permitted to expend any funds at all. Hereafter, if this legislation is permitted to stand, the ultimate authority to which all budget units must look for their expenditure are fifteen administrative officers, thirteen of whom are appointees of the executive; they will in fact appropriate the funds.

The purse strings of our government have been entrusted by our constitution to the representatives of the people—the house and senate—the legislative branch of the government. It is their greatest power. For who will deny that the power over a man's subsistence is in fact a power over his will. Thus that power is reposed in a diverse body of various views and interest— the legislature, elected by the people from many areas of the State and the will of that body is the will of the people. The people in adopting the constitution did not deem it proper to entrust the ultimate power over the purse strings of our State to any other group appointed by the executive or even a select few of the legislature.

And why has this fundamental tenet of all free societies been embodied in our constitution? It is to avoid so far as can be done by fallible man the obvious improper delegation of that power and results such as may readily flow from the legislation before us.[2]

Let us visualize that the funds of the State are inadequate to finance all budget units and the Commissioner and Budget Committee conceive that "in their opinion" some other budget unit should properly be entitled to operate and be "allotted" its full appropriation, whereas, the funds essential to maintaining certain necessary aspects of the school system will not be "allotted". Conceive, if you will, of the Commissioner and Budget Committee issuing an edict to-

2. It is no answer to this proposition to say the act may not be unconstitutionally administered. It is the unlawful delegation of constitutional authority which is reprobated and the act which purports to do this is unconstitutional in its inception.

morrow that hereafter no funds shall be allotted for certain necessary and essential functions of the school system of the State. As a result the schools would be required to close their doors.[3]

It seems quite clear to me from our constitution that such a decision is not to be made by the Commissioner or the Budget Committee. If such a decision is to be made it is properly to be made by the legislature. True, it would be necessary to anticipate the needs of the budget units, but that responsibility and that obligation are there and cannot be abandoned by the legislature to others.

I respectfully dissent.

3. The contested legislation goes far beyond that approved by this court in Wall v. Close, 203 La. 345, 14 So.2d 19 (1943).