Dear Mr. Burmaster
On behalf of Senator Lynn Dean, you have presented this office with four questions pertaining to the legislative capital outlay process:
1. "Can the state legally appropriate capital outlay monies obtained from general bond sales, to a local government, for construction of facilities located on land donated to the local government, said donation being subject to revocation of donation for cause?"
2. "In the event the land reverts to the private donor because of revocation for cause, what is the position of the state with respect to public funds so expended, especially the statement of law in Article VII, Section 14 of the Constitution?"
3. "What federal tax ramifications for the state, if any, would ensue as a result of the scenario outlined above?"
4. Can the Legislature, given the scenario outlined above, condition an appropriation in such a manner to guard against the scenario outlined above, notwithstanding the provisions of Article III, Section 16 of the State Constitution?
In response to your first question, please be advised that our research did not reveal any provisions of law which would prohibit the state from appropriating capital outlay funds to a political subdivision to be utilized for construction, merely because the construction is to take place on property subject to a revocation of donation for cause. Of course, if the legislature is aware that the property will, or is likely to revert to its prior owner, then the appropriation and subsequent improvement of the property could be considered by a court to be a disguised donation to the private donor, and therefor in violation of La. Const. Art. VII, Sec. 14.
In response to your second question, this office is unaware of any provision of law which addresses the position of the state if property which has been improved with state capital outlay funds reverts to a private donor because of a revocation for cause. If there is a substantial likelihood that the property will revert to its prior owner, then we suggest that the legislature should give serious consideration to whether or not the appropriation should be made. The question of whether the appropriation should be made is a policy issue within the purview of the legislature, as opposed to a question of law.
The answer to your third question depends, to a large degree, upon the legislature's "reasonable expectation" that the appropriation will be used for a governmental purpose. If the legislature knows that the property is, or is likely to revert to the donor, then in addition to the potential Art. VII, Sec. 14 problem, the legislature would not have a "reasonable expectation" that the property will be used for governmental purposes. If there is not a reasonable expectation that the property will be used for governmental purposes, it is possible that the bonds, or a portion thereof, could be considered to be private activity bonds and if so, taxable under the Internal Revenue Code. However, the test of whether a bond is a private activity bond under the Internal Revenue Code has a number of factors, including the size of the bond issue; therefore, it is not possible to determine at this time if such a project would cause bonds issued to fund the appropriation to be taxable. Such a determination must be made by the State's general obligation bond counsel in consultation with the Attorney General if and when bonds are authorized to be sold to fund the capital outlay appropriation for the project.
With regard to your fourth question, it is the opinion of this office that the legislature probably could fashion a condition that would be deemed constitutional. Our opinion in this regard is based upon the decision of the Louisiana Supreme Court rendered in Woodard v. Reily, 152 So.2d 41 (La. 1963). That case involved provisions in the General Appropriation Bill of 1962 which established a system of controls and accounting with relation to monies appropriated by the legislature. The Court first noted that the bill in question contained no provisions whereby any officer or department of government would receive an appropriation ". . . for contingencies or for a contingent fund." Furthermore, the Court held that the appropriations in question were not "subject to the occurrence of an uncertain event", in spite of the plaintiff's allegation that the appropriations were subject to the approval of the Commissioner of Administration and the Legislative Budget Committee. According to the Court, the Commissioner of Administration and the Budget Committee could not decrease nor increase the amount of an appropriation to a particular agency but merely allocated appropriations quarterly and approved the items for which the funds are spent. See also: Atty.Gen.Op. No. 77-459.
We trust the foregoing to be of assistance.
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: _______________________________ JEANNE-MARIE ZERINGUE BARHAM Assistant Attorney General
RPI:JMZB:jv